ate confusion, and to enable the later corporation to obtain the business of the prior one. The court said (page 469, 144 N. Y., page 491, 39 N. E., 27 L. R. A. 42, 43 Am. St. Rep. 769):

"The principle upon which courts proceed in restraining the simulation of names in the nature of trade-marks, which have come to designate the business of a particular person or company, is stated in Lee v. Haley, L. R. 5 Ch. App. 155, an action to restrain the use by the defendant of the name of 'The Guinea Coal Co.,' in his business. 'I quite agree,' said Gifford, L. J., 'that they [the plaintiffs] have no property in the name [Guinea Coal Co.], but the principle upon which the cases on the subject proceed is, not that there is property in the word, but that it is a fraud on a person who has established a trade and carries it on under a given name that some other person should assume the same name, or the same name with a slight alteration in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name.' The cases are not infrequent in which the use of corporate names has been restrained on the principle of the trade-mark cases. Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278 [9 Am. Rep. 324]; Massam v. Thorley Cattle Food Co., L. R. 14 Ch. Div. 748; Celluloid Mfg. Co. v. Cellonite Mfg. Co. [C. C.] 32 Fed. 94; Newby v. Oregon Central Rway. Co., Deady, 609 [Fed. Cas. No. 10,144]; Rogers Mfg. Co. v. Rogers & Spurr Mfg. Co. [C. C.] 11 Fed. 495; Le Page Co. v. Russia Cement Co., 51 Fed. 942 [2 C. C. A. 555, 17 L. R. A. 354]."

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.

---

(89 App. Div. 340.)

SCHIVEREA v. BROOKLYN HEIGHTS R. CO. et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. NEGLIGENCE—JOINDER OF DEFENDANTS—OBSTRUCTING STREET—PERSONAL INJURIES—JUDGMENT.

A joint judgment against a street railroad and a contractor doing work for it, requiring the tearing up of a city's streets, is proper, where, through negligence in placing a cord across the highway, it was rendered unsafe for travel, by reason whereof plaintiff was injured, whether the contractor be an independent one, or whether the servant of one or the other was the cause of the cord being there.

Appeal from Trial Term, Kings County.

Action by George W. Schiverea against the Brooklyn Heights Railroad Company and another. From a judgment for plaintiff and an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

I. R. Oeland, for appellant Brooklyn Heights R. Co.
H. Snowden Marshall, for appellant Frank Gallagher.
James C. Cropsey (F. W. Catlin, on the brief), for respondent.

HIRSCHBERG, J. The action was originally brought against three defendants, but the complaint was dismissed on the trial as to one of them, and the only questions presented on the appeal relate to the liability of the other two, who are the appellants.

The plaintiff has recovered a judgment against the two appellants for injuries sustained in a fall occasioned by tripping over a cord be-

tween an eighth and three-sixteenths of an inch in thickness, which was securely fastened across the footway of a temporary wooden bridge. The bridge was constructed across an open trench at the corner of Third and Prospect avenues, in the borough of Brooklyn, and was designed for the use of pedestrians during the progress of the work of constructing a subway for the electric wires of the appellant the Brooklyn Heights Railroad Company through Third avenue. The cord was stretched about six inches above the surface of the footway. The floor of the bridge, as well as the string, was covered with dirt, so that both were of the same color, and the attention of the plaintiff was not attracted to the cord as he was walking on the occasion in question, in the prosecution of his business as salesman, from shop to shop to show his wares. Neither appellant charges the plaintiff with contributory negligence, and neither claims that the recovery is excessive. The plaintiff was examined by physicians on behalf of each of the appellants, and none was called to testify, the extent of the injuries apparently not being a subject of serious dispute. A number of exceptions were taken, but I cannot find that any of them presents reversible error, and the discussion will be confined to a consideration of the question which was chiefly litigated.

Each of the appellants claimed on the trial that the other was alone liable for the consequences of the accident, the railroad company mainly upon the ground that the appellant Gallagher was an independent contractor in the doing of the work, and that the cord was used in his work by his servant and in his behalf, and the appellant Gallagher mainly upon the ground that, although the man who stretched the cord was in his employ as his servant, he was acting in respect to the use of the cord as the servant of the railroad company in a branch of the work belonging exclusively to that corporation, and that it alone was accordingly responsible for the servant's negligence.

The case has been tried upon the theory that the work was being prosecuted by the railroad company under a permit received from some source, presumably, if it is proper to indulge in any presumptions in reference to it, from the municipal authorities. No permit appears in the case as settled, although it does appear that a permit of some kind was received by the company from some one, and that permit was offered and received in evidence. If no proper or sufficient permit was issued, it would follow that the interference with the public street constituted a nuisance, with the maintenance of which both appellants are chargeable under the evidence. The railroad company entered into a written contract with Gallagher by which he was employed to do the work of digging the trench and installing the conduit for the reception of the wires, and he was engaged in the prosecution of that work at the time of the accident, and no citation of cases is necessary in support of the proposition that both are liable if the work was in progress without lawful authority. Assuming, however, that such authority was duly conferred, I think there was sufficient evidence to support the judgment against both appellants. The specifications attached to the contract required Gallagher to lay the ducts constituting the main part of the subway or conduit at a grade in the trench to be furnished by the company's engineer, and it was necessary

to dig the trench at the proper depth for that purpose. The stakes and timbers for the grade line were to be furnished in place by Gallagher, but nothing is said about the use of a cord, or about any other means by which the required grade should be indicated to Gallagher for his information and for the use of his men. The cord in question was adopted for this purpose by both appellants. Gallagher testified that he objected to it; but it is undisputed that he furnished it, and that his servant used it, as a means of indicating to his men how deep they should dig the trench. The company's engineer established the grade and made chalk marks where the line was to run, and every morning, before work commenced, Gallagher's servant strung the line to the stakes referred to in the specifications, and every night he took it up. It was undoubtedly an act of personal negligence that on the morning of the accident this servant stretched the line across the footbridge above the planking, instead of underneath the bridge, as he should have done. Gallagher testified that the company's engineer asked him to furnish a man to be at their disposal in looking after the line, and it is argued by his counsel that, as the furnishing of the required grade was the duty of the company under the contract, whatever was done in that connection was the company's work, and it alone is liable. On the other hand, the company contends that all it did was to require Gallagher to assign one of his men to do the work, it being a conceded part of his work; and in support of its contention it proved on his cross-examination that after the accident he stated in effect that he didn't see where the company came in, saying "that, as to any liability coming out of the case for the string being there, or anything of that kind, that would belong to me; that it was up to me." The controversy is not very material, inasmuch as I have said that the evidence fully justified the jury in concluding that the grade line was indicated by a means adopted by both parties to the contract—the company engaged in the active inspection and supervision of the work, and the contractor engaged in its preformance—the means adopted being used jointly by the servants of both, acting together in the consummation of a common purpose. However that may be, it seems quite obvious that both appellants are liable independently of the doctrine of respondeat superior. In the first place, the question of liability of an independent contractor has no application to a case of interference with the public streets, whether by digging trenches in them or by placing dangerous obstructions upon them. If the accident had occurred because of some negligence in the actual doing of the work of the construction of the subway, such as blasting or digging, or in the actual careless handling of the tools and implements on the part of the contractor's men, the company might be relieved of liability by the existence of an independent contract in the execution of which it had no share or control. But the company assumed a duty imposed on it by law, when it engaged in the work of tearing up a public street, equally whether it embarked in the work itself or engaged a contractor to do it, viz., the duty of keeping the highway in a reasonably safe condition for travel while the work was in progress. That duty it owed to the public, and its liability, when established, rests upon its violation of that duty, and exists although the specific act complained

of may have been committed by the independent contractor. Storrs v. City of Utica, 17 N. Y. 104, 72 Am. Dec. 437; Brusso v. City of Buffalo, 90 N. Y. 679; Turner v. City of Newburgh, 109 N. Y. 637, 16 N. E. 681; Deming v. Terminal Railway of Buffalo, 169 N. Y. 1, 61 N. E. 983, 88 Am. St. Rep. 521; Downey v. Low, 22 App. Div. 460, 48 N. Y. Supp. 207; Johnston v. Phœnix Bridge Co., 44 App. Div. 581, 60 N. Y. Supp. 947, affirmed 169 N. Y. 581, 62 N. E. 1096; Murphy v. Perlstein, 73 App. Div. 256, 76 N. Y. Supp. 657; Ann v. Herter, 79 App. Div. 6, 79 N. Y. Supp. 825. The same thing is true of the contractor. In taking a contract to dig up the street, he, also, assumes and is subject to a legal obligation to see to it that the highway is maintained in a reasonably safe condition for public travel. He cannot escape this liability by showing that the mischief was done by a servant of his whom he temporarily loaned to another, for the liability rests upon the failure to discharge the duty which he owes to the public, and not at all upon his obligation to respond for his servant's fault. The cases cited by the learned counsel for the appellant Gallagher on the relation of master and servant have accordingly no application. Gallagher constructed the footbridge as a part of his work, and it was his undoubted duty to keep it in a reasonably safe condition, and he is liable to the plaintiff because he failed to exercise any care in that respect.

It follows that the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.