MARY A. BERGEN, Respondent, *v.* MORTON AMUSEMENT COMPANY, INC., Appellant, Impleaded with CHARLES SHAFFER and EDWARD SHAFFER, Respondents, and THOMAS L. SALTARELLI, Defendant.

Fourth Department, May 2, 1917.

Negligence — personal injuries caused by excavation — failure to provide lateral support — evidence justifying recovery — municipal corporations — ordinances of city of Buffalo requiring protection of excavation by sheetpiling — common-law rights of lateral support — when landowner cannot escape liability by employing independent contractor — tenant may recover damages resulting from failure to provide lateral support.

Action to recover damages for personal injuries. The defendant, a landowner in the city of Buffalo, was engaged in the construction of a theatre and had excavated over eleven feet perpendicularly below the curb line on the boundaries of its lot adjacent to a cement sidewalk which gave access to premises of which the plaintiff was a tenant. Although the ordinances of the city of Buffalo require any person intending to excavate to notify the owner of adjoining premises and also to support the adjoining land with sheetpiling where the excavation goes to a greater depth than four feet, neither the defendant nor its contractor had in any way complied with these ordinances with the result that, while the plaintiff was passing over the cement walk, it gave way owing to a cave-in underneath the walk of the soil adjacent to the excavation into the excavation caused by prior heavy rains, and she fell into the excavation. Evidence examined, and *held*, sufficient to charge the defendant and its contractor, as codefendant, with sufficient notice of the dangerous condition of the excavation

and that they should have taken means to avert the danger if they had exercised reasonable care so that defendants' negligence was properly submitted to the jury.

In such action it was proper to charge in substance that the jury might base the defendants' negligence upon their failure to protect the excavation with sheetpiling as required by the municipal ordinance.

However, even if it were error to receive said ordinance in evidence, a verdict for the plaintiff was justified by the other evidence.

The plaintiff as tenant of the adjoining building had a right of lateral support, and under the circumstances the defendants may be held liable for their failure to furnish such support.

*It seems,* that the right of lateral support does not include the right of the support of an adjoining building which increases the lateral thrust, which latter right can only be acquired in this State by grant or covenant, express or implied, although in England it may be acquired by prescription.

By common law a landowner who by excavating removes the lateral support from adjoining land takes the risk of resulting damages however careful he may be, and he cannot, by delegating the work of excavation to another, escape liability for such damages.

The plaintiff as tenant of the adjoining building and having right of access thereto over the cement sidewalk is entitled, personally, to recover damages, which are not confined to those suffered by her landlord.

Although at common law in the absence of a covenant there is no right of lateral support where an increased weight is placed upon the soil by buildings, there is a right of lateral support for the additional burden imposed by a small sidewalk and by the weight of a human being walking thereon.

The common council of the city of Buffalo were authorized to enact as a valid regulation the ordinance requiring such excavations to be guarded by sheetpiling. This, under subdivision 5 of section 17 of the charter empowering it to prescribe general regulations for the erection of all buildings, and also under subdivision 11 of section 17, the general welfare clause conferring police powers. Such ordinance did not attempt to abrogate a settled rule of the common law but on the contrary to enforce such rule.

Nature of the right of lateral support stated and cases analyzed, *per* DE ANGELIS, J.

APPEAL by the defendants, Morton Amusement Company, Inc., and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 25th day of May, 1916, upon the verdict of a jury for $1,500.

The appellant appeals from the whole of said judgment

including the part thereof which dismissed the complaint upon the merits as against the defendants, Charles Shaffer and another, and also from an order entered in said clerk's office on the 30th day of June, 1916, denying their motion for a new trial made upon the minutes.

*Elijah W. Holt* and *William J. Hickey*, for the appellant.

*Carl Sherman*, for the respondent Bergen.

*Charles F. Boine*, for the respondents Shaffer.

DE ANGELIS, J.:

The appeal as against the defendants Shaffer is dismissed by consent.

The action is for personal injuries due to the alleged negligence of the defendants.

The defendant Morton Amusement Company, Inc., was the owner of a lot of land situated on the northerly side of Connecticut street, a short distance west of Sixteenth street, in the city of Buffalo, and was engaged in building a moving picture theatre thereon at the time of the accident hereinafter referred to. The defendant Thomas L. Saltarelli was awarded the contract by the amusement company to provide all materials for and perform all the mason work according to the plans and specifications, including all excavating, under the direction of the architect. Saltarelli sublet the work of excavating and removing the necessary earth for that purpose to the defendants Shaffer with the approval of the architect. One George M. Wolf was the architect and he was also the president of the amusement company. There were two houses on the lot fronting on the westerly side of Sixteenth street whose southerly line bounded the northerly line of the amusement company's lot, one of the houses in the front and the other in the rear. A cement walk, *two* feet wide, extended from Sixteenth street westerly, south of the houses, furnishing the pathway for the entrance to the two houses. There was to be no cellar underneath the theatre building, but there was a removal of the earth for the construction, beginning at the front on Connecticut street

and extending by uniform grade northerly until it reached the depth of five feet from the surface at the rear of the building proper. The plans and specifications also provided for a furnace pit or heater room, further north and on the easterly side, about twenty feet square whose northerly line was substantially co-terminus with the southerly line of the lot above described fronting on Sixteenth street. The jury was justified in finding that at the time of the accident the earth had been excavated for this furnace pit, leaving the northerly side of the pit practically perpendicular and eleven and a half feet deep. No evidence was given to show with any degree of precision the boundary line between the lot of the amusement company and the lot fronting on Sixteenth street but the jury were authorized to find that the northerly side of the furnace pit excavation was on the boundary line. The southerly side of the cement walk was about a foot from the northerly side of the excavation for the furnace pit. This cement walk was in daily use down to the time of the accident and the only guard for the protection of those using the walk was a two by four rail nailed to stakes south of the walk, in the edge of the excavation.

The plaintiff and her husband, as tenants, occupied the front house whose entrance was easterly of the furnace pit excavation and ordinarily she had no occasion to use that part of the walk which ran along the side of this excavation. She worked out by the day leaving her house in the morning and returning after her day's work.

On the 12th day of May, 1914, the plaintiff after a day's work house cleaning returned to her home about half after five o'clock. Soon thereafter she discovered that a basket belonging to her had been taken by mistake to the rear house and started over the cement walk to get the basket. When she reached a certain point opposite the furnace pit excavation and stepped on the joint between two of the cement blocks, the blocks went down and she was thrown thereby sidewise into the excavation. In her fall her side came in contact with an exposed gas pipe on which her body lodged. She testified that no earth fell when the cement blocks went down and it was substantially undisputed and the jury were certainly justified in finding that the walk let the plaintiff down because

it had been undermined and the earth which had supported it had gone into the excavation owing to the removal of the lateral support which the excavated earth had theretofore afforded it. The jury were justified in finding that the plaintiff had no notice that her use of the walk would be attended with danger. It appeared that the soil in the region of the excavation was clayey and the walk might not have been undermined but for the effect of the heavy rains that preceded the day of the accident. The evidence was ample to show that both the amusement company and the contractor Saltarelli had sufficient notice of the danger to which the condition of the excavation exposed the plaintiff and those who had occasion to use the walk to have taken means to avert the danger if they had exercised reasonable care.

It is to be observed that the jury exonerated the defendants Shaffer, the subcontractors, from responsibility for the accident upon the theory, authorized by the evidence, that at the time of the accident they had completed their work and had turned over the portion of the excavation involved to the general contractor which had been accepted by him.

The contract of Saltarelli, the general contractor, obligated him to comply with the plans and specifications for the building and the specifications required him to comply with " all municipal rules, ordinances or regulations relating to buildings." The specifications also bound him to answer for any loss, damage or injury to any person or persons through the neglect, carelessness or incompetency of himself or his employees.

At the time of the construction of this theatre building and the execution of the contracts for such construction there existed sections 72 and 73 of the ordinances of the city of Buffalo. The following is a copy of the 1st paragraph of section 72:

" Whenever an excavation is to be made for any building or other purpose, and there shall be any wall or structure wholly or partly on adjoining land or near the intended excavation, then the party causing such excavation to be made shall notify the owner of said adjoining premises of such intended excavation, and also of the depth to which it is proposed to be made."

The following is a copy of section 73:

" In excavating to adjoining premises, where there is not existing a retaining wall at the time of such excavation, and in excavating to line of street curbs for any building or other purpose to a greater depth than four feet from grade, the party causing such excavation shall sheet-pile with plank two inches thick, extending full width and from grade to bottom of excavation. The party causing such excavation and placing such sheet-piling shall replace all damaged work and material in as good condition as it was before the excavation was commenced."

It is undisputed that nothing was done to support or protect the northerly side of the furnace pit excavation and the same was left down to the time of the accident without anything to prevent the earth from caving in, or being washed out by the rains, and that nothing was done by the owner of the theatre lot or any one employed in the work to give the owner of the lot on which this sidewalk existed the benefit of any of the provisions of the 73d section of the ordinances referred to.

The appellant, the amusement company, sought at the trial and now seeks immunity from liability to the plaintiff upon the ground that as it had employed a competent independent contractor to perform the work in question and the relation of master and servant as between it and him did not exist nor was he its agent, the appellant could not be held to respond for the negligence of the general contractor or his subcontractors. The appellant further maintains that it was not shown guilty of the neglect of any duty that it owed the plaintiff.

It will be observed that the learned trial judge gave the appellant the full benefit of the rule which relieves the owner from liability for the negligence of a general contractor and submitted the question of the appellant's negligence to the jury within very narrow limits. It will be remembered that the architect was the president of the appellant, its chief executive officer. The evidence shows that he knew that nothing had been done to protect the wall of the excavation next to the Sixteenth street lot and knew of the heavy rains and knew there was danger that the undermining would take place just as it did take place. He had all this knowledge a

sufficient length of time to have afforded him ample opportunity to supply the necessary protection. So that we have the case where the owner of property knew of a wrongful and dangerous condition of its property that might result in injury to third parties having the right to protection from such condition and where such owner knew of such condition a sufficient length of time so that it could have and ought to have removed the menace and failed to do it. This being the situation, the learned trial judge submitted to the jury the question whether or not such conduct was negligent, instructing the jury that if they found it to be negligent they might award such damages to the plaintiff as they might find she had suffered as the result of such negligence. We think the appellant cannot successfully complain of this ruling. In this connection it is to be observed that the trial judge called the attention of the jury to the 73d section of the ordinances of the city of Buffalo, instructing them in substance that they might find failure to observe the requirements thereof to be some evidence of negligence in connection with the other evidence. Assuming this section of the ordinances to be valid, which subject we shall discuss later, the ruling was right. Apart from this section of the ordinances, the evidence was sufficient to justify the trial court in submitting the question above considered to the jury. The appellant itself introduced evidence to show that it was customary in Buffalo to shore up and protect the sides of such excavations. We think that that evidence with the other evidence in the case was sufficient to justify the submission to the jury of the negligence of the appellant within the narrow limits above described and that, assuming it to have been error to receive that section of the ordinances in evidence, such error was insufficient to justify us in disturbing the verdict.

We think there is another view to take of the liability of the appellant based on the right of the owner of a parcel of land to the lateral support to his soil of the soil of the adjoining land, and the nature and character of such right. This right has been well described by Lord BLACKBURN in *Dalton* v. *Angus* (6 App. Cas. 740, 808) as follows:

" It is, I think, conclusively settled by the decision in this House in *Backhouse* v. *Bonomi* (9 H. L. C. [Clark] 503) that

the owner of land has a right to support from the adjoining soil; not a right to have the adjoining soil remain in its natural state (which right, if it existed, would be infringed as soon as any excavation was made in it); but a right to have the benefit of support, which is infringed as soon as, and not till, damage is sustained in consequence of the withdrawal of that support.

" This right is, I think, more properly described as a right of property, which the owner of the adjoining land is bound to respect, than as an easement, or a servitude *ne facias*, putting a restriction on the mode in which the neighbor is to use his land; but whether it is to be called by one name or the other is, I think, more a question as to words than as to things. And this is a right which, in the case of land, is given as of common right; it is not necessary either in pleading to allege, or in evidence to prove, any special origin for it; the burthen, both in pleading and in proof, is on those who deny its existence in the particular case."

It is equally well settled that such right to lateral support does not extend to the protection of buildings. In England the right to lateral support for the protection of buildings might be acquired by prescription but such right could not be acquired in that way in this State. In England or here the right to such lateral support for the protection of buildings may be acquired by grant or covenant express or implied.

The owner of land may excavate on his own land up to the line between it and the adjoining land of his neighbor, but in so excavating he must take care to substitute for the soil so removed what shall be at least the equivalent thereof in lateral support to the soil of his neighbor. He who so excavates takes the risk, however careful he may be, of violating his neighbor's rights and thereby becoming responsible for any damages that may be the legitimate effect of such violation. The duty thus imposed upon one so excavating is of such a nature as in reason to forbid that he may delegate to another the work of so excavating and escape liability from responding in damages for failure in its performance. We are unable to perceive any difference in the character of the duty resting upon one about to do or cause to be done excavating on his own land in such proximity to adjoining land

as to endanger the lateral support to the soil of the adjoining
land and the duty resting on one about to do or to cause to
be done excavating on his own land in such proximity to
adjoining land as to endanger the lateral support of a building
on such adjoining land whose owner has acquired by pre-
scription or grant or covenant express or implied or legislative
authority, the right to such support. It has been declared
that the character of the duty is the same by high authority.
(*Dalton* v. *Angus, supra,* 742, 746, 792.)

There is authority in support of the proposition that such
duty cannot be delegated so as to relieve the person primarily
responsible for its performance from liability for failure in
its performance. (*Dalton* v. *Angus, supra; Dorrity* v. *Rapp,*
72 N. Y. 307, 312; *Rosenstock* v. *Laue,* 140 App. Div. 467.)

In the *Dalton* case Lord BLACKBURN said (p. 829): " Ever
since *Quarman* v. *Burnett* (6 M. & W. 499) it has been con-
sidered settled law that one employing another is not liable
for his collateral negligence unless the relation of master and
servant existed between them. So that a person employing
a contractor to do work is not liable for the negligence of
that contractor or his servants. On the other hand, a person
causing something to be done, the doing of which casts on
him a duty, cannot escape from the responsibility attaching
on him of seeing that duty performed by delegating it to a
contractor. He may bargain with the contractor that he
shall perform the duty and stipulate for an indemnity from
him if it is not performed, but he cannot thereby relieve
himself from liability to those injured by the failure to
perform it."

The respective rights and duties of owners of adjoining
property in a party wall seem to be analogous to the duty
under consideration and neither of such owners may relieve
himself from liability for failure to perform such duty by
delegating to another the performance of work affecting the
party wall that may endanger his neighbor's building. (*Hughes*
v. *Percival,* 8 App. Cas. 443, 445.)

Bearing upon the duty owed by the appellant to the
plaintiff, we may ask, What did the appellant undertake in
the construction of this theatre building? Among other
things it undertook to take from the Sixteenth street lot the

lateral support to which it was entitled. This it had no right to do unless it substituted an equivalent support. Before the equivalent was to be furnished the soil forming the lateral support had to be removed so that the accident was the result of the work itself however skillfully performed. Who then was the author of the mischief? Was it not the appellant which caused the excavation to be made, whether it was done by its own employees or let out by contract? The proprietor first determines that the excavation shall be made and then he selects his own contractor. Could the appellant escape responsibility for creating the dangerous situation resulting in the injuries to the plaintiff by interposing the contract which it made for the very thing which created the danger? We have here adopted the argument of Judge COM-STOCK in *Storrs* v. *City of Utica* (17 N. Y. 104, 108.) We think the *Storrs* case points out the precise ground upon which the liability of the appellant herein should rest. The criticism in that case of *Blake* v. *Ferris* (5 N. Y. 48) by Judge COMSTOCK and his discussion of the other cases referred to in the opinion makes clear the proposition that the appellant could not escape responsibility for the performance of the duty involved by letting the contract for the work to an independent contractor. The view of the law so forcibly expressed in the *Storrs* case is sustained in *Turner* v. *City of Newburgh* (109 N. Y. 301) and *Deming* v. *Terminal Railway of Buffalo* (169 id. 1). It is entirely clear that the appellant could not be held responsible for the collateral negligence of Saltarelli, the independent contractor. The cases relied upon by the appellant are easily distinguished from the case at bar. (*Berg* v. *Parsons,* 156 N. Y. 109; *Uppington* v. *City of New York,* 165 id. 222; *Froelich* v. *City of New York,* 199 id. 466; *Smyth* v. *City of New York,* 203 id. 106.)

In the *Berg* case it appeared that the plaintiff and defendant were owners of adjoining pieces of real estate in the city of New York. Upon the plaintiff's property there was a dwelling house. The defendant's property was vacant and was covered with a mass of rock which extended above the curb. The defendant made a contract with one Tobin to excavate his plot to the depth of ten feet below the curb line, preparatory to building thereon. In the performance

of the contract, Tobin appears to have proceeded unskillfully. and with considerable recklessness and, in the work of blasting he caused some damage to the plaintiff's house within and without. Although it was held by a divided court that the plaintiff was not entitled to recover, it is apparent that the negligence was solely the collateral negligence of the contractor.

In the *Uppington* case the city of New York had let to independent contractors the construction of a sewer in one of its streets. The sewer was built wholly in the street without encroaching upon private property. The city had the right to use the street for that purpose so long as it did not encroach upon the property of abutting owners. The claim of the plaintiff was that the work of constructing the sewer caused the ground in front of her premises to settle and thereby her house was injured. The court held that the city was not liable in any event and that the contractors would be liable for any negligence resulting in the injury to the plaintiff's property. Here again was a case where if there were any negligence it would have been the collateral negligence of the contractors.

There is nothing in the *Froelich* case conflicting with the view we have expressed.

In the *Smyth* case plaintiff's abutting property was injured by an explosion of dynamite used by a subcontractor of the general contractor and it was held that the city was not liable although the general contractor and the subcontractor would be liable for any negligence in the premises. Here again was the case of collateral negligence of the contractor and subcontractor.

So that in the case at bar the appellant as owner is liable at common law for depriving the adjoining land on which the plaintiff is a tenant of the lateral support to which it was entitled.

But the counsel for the appellant argues that the appellant's liability is confined to such damages as were suffered by the plaintiff's landlord to his land, if any, leaving the plaintiff without remedy. If that view is correct, then, if the owner of the adjoining land, that is, the plaintiff's landlord, had been dropped into the excavation and injured as the plaintiff

was, he also would have been without remedy for his personal injuries. We do not take that view of the law. The plaintiff, the tenant, had all the rights of her landlord to the use of the walk and is entitled to damages for personal injuries caused by one violating those rights. The jury have found that the plaintiff suffered injuries as the direct result of the failure of the appellant to perform a duty which it owed to her and it would be a reproach to our judicial system if the appellant could escape liability upon a ground so utterly devoid of the first element of justice.

The counsel for the appellant further argues that, assuming that the rights of the tenant in the respect mentioned are the same as those of the landlord, the recovery here cannot be sustained because the right to the lateral support of the soil is confined solely to the land in a state of nature with no superincumbent burden like the walk and without the additional burden of the weight of a human being. No case is cited to sustain any such doctrine. But the proof here is that neither the weight of this little two-foot walk nor this woman's weight had anything to do with the undermining of the walk. The soil that supported the walk had disappeared before the plaintiff reached the point where the walk went down with her. Suppose there had been no cement walk and in its place simply a pathway made by the tread of the feet of the tenants of the lot upon the surface of the earth in its natural state and there had been a depression in such walk at the point of the accident caused in the same manner and of the same size as that into which the blocks of the cement walk on which the plaintiff stepped, dropped, and she had stepped into the depression and been injured in consequence thereof. Would there be any doubt about the negligence of the defendant? Does the fact that the blocks of cement went down with her affect the question of the defendant's negligence? It seems to us that it does not.

We think the appellant's liability may properly be upheld upon its failure to perform its duty not to withdraw from the soil of the adjoining lot its lateral support and that this view finds support in *Riley* v. *Continuous Rail Joint Co.* (110 App. Div. 787; affd., 193 N. Y. 643).

The trial court permitted the jury, as it already appears,

to consider the failure of the appellant to comply with section 73 of the ordinances of the city of Buffalo as some evidence of negligence on its part in connection with the other evidence in the case.   The appellant argues that such effect cannot be given to this provision in the ordinances because the common council had no authority under the powers delegated to it by the Legislature to pass an ordinance for such purpose. (Laws of 1891, chap. 105, with amendments, constituting the charter of the city of Buffalo under which the ordinances were enacted.)   Sections 72 and 73 of the ordinances were received in evidence.   Section 72 has no special bearing upon the case except in its first paragraph which introduces the subject of excavation.   We need not, therefore, pass upon its validity.   Section 73 is simply a regulation in harmony with and to carry out the common-law rule for lateral support to the soil.   It is fully authorized by subdivision 5 of section 17 of the charter which empowered the common council " to prescribe general regulations for the erection of all buildings in the city."   The appellant was engaged in erecting a building and the excavation in question was part of the work.   We think that subdivision 11 of section 17 of the charter, usually referred to as " the general welfare clause," clothed the common council with the power to pass this ordinance.   At the time of the passage of the statute forming the charter of the city of Buffalo it was a large growing city.   Land had become very valuable.   Building regulations were necessary and might well have been enacted by the common council in the exercise of the police power.   The learned counsel for the appellant says in his brief: " We know of no case in which an ordinance has been accorded the effect of abrogating a settled rule of common law.   The Legislature may abrogate, but it is not conceivable that a city council may with impunity set aside an established doctrine and create a new cause of action."

There was no attempt by the city council in the enactment of section 73 of the ordinances to abrogate a settled rule of the common law.   The purpose was to enforce a settled rule of the common law and in that purpose to require certain specific acts to be performed to make more certain the observance of the rule of the common law.

We agree with the learned trial judge that the plaintiff

rather than the appellant might complain of his rulings on the trial and that the appellant's rights were fully protected at every stage of the trial.

It follows that the judgment and order appealed from should be affirmed.

All concurred.

Appeal as against defendants Shaffer dismissed by consent. Judgment and order affirmed, with costs.