Elizabeth Kuhn, as Administratrix, etc., of Francis Kuhn, Deceased, Plaintiff, *v.* P. J. Carlin Construction Co., Inc., and Others, Defendants.*

Supreme Court, Bronx County, March 26, 1935.

* See, also, *Gambon* v. *City of New York* (151 Misc. 201).

*J. Gruber* [*R. X. Kuzmier* of counsel], for the plaintiff.

*E. C. Sherwood* [*H. B. Clark* and *F. J. Locker* of counsel], for the defendant P. J. Carlin Construction Co., Inc.

*P. S. Mason* [*P. Koch* of counsel], for the defendant Albee-Godfrey Whale Creek Co., Inc.

LAUER, J. This is a motion to dismiss the plaintiff's complaint. The action was instituted by the plaintiff, as administratrix of the estate of one Francis Kuhn, deceased, who met his death as a result of the sinking of the steamship *Observation* on September 9, 1932. At the termination of the plaintiff's case the defendants Albee-Godfrey Whale Creek Co., Inc., and the P. J. Carlin Construction Co., Inc., hereinafter called the Albee Co. and the Carlin Co., respectively, moved for a dismissal of the complaint on the ground that as a matter of law no liability on their part had been established. The motion was granted in respect to the defendant Albee Co. and the decision on the motion was reserved as to the defendant Carlin Co. The motion was renewed and decision reserved at the end of the defendant's case. Thereafter the case was submitted to the jury, which returned a verdict against the defendant Carlin Co. in the sum of $35,000. It is the determination of the motions upon which the decision was reserved which is now before the court.

The city of New York, owner of Riker's Island, entered into a contract with the Carlin Co. for the erection of certain additions to the penitentiary located on that island. The Carlin Co., which was designated in the contract as the general contractor, subcontracted part of its work to the defendant Albee Co. The city

also entered into contractual relationships with other contractors to do the plumbing work, heating work, and for the erection of a power plant. These contractors were not made parties to this suit. The city itself performed no part of the work on the island and its employees were not engaged in the building operations. In each of the contracts entered into with the city was the following clause: " Each contractor shall investigate the existing means of transportation to and from Riker's Island. The City shall not be held responsible for providing regular ferry service. The contractor must assume responsibility for the transportation from mainland to island of men and materials for all work done under this contract."

The Carlin Co. entered into an agreement with one George Forsythe, owner of the steamship *Observation,* hereinafter called Forsythe, whereby the latter was to convey the employees engaged in the work to and from the island for a round trip fare of ten cents each to be paid by the men. The Carlin Co., under the terms of this agreement, guaranteed a daily total of sixty dollars, and in the event of a deficiency existing, it obligated itself to make up such deficiency. The owner of the boat was a duly licensed master and the boat itself had been inspected by the United States authorities and was licensed for the purpose of carrying passengers.

On September 9, 1932, after the service was in operation for several months and in use by the employees of all of the contractors and subcontractors, the boiler of the steamship *Observation* exploded and the boat sank. The plaintiff's intestate, an employee of the Albee Co., was killed as a result of this accident. The plaintiff sought to prove on the trial that prior to the explosion the defendant Carlin Co. had knowledge that the boiler of the steamship *Observation* was in a deteriorated and precarious condition and was unsafe for use. The question here to be determined is, resolving all reasonable inferences from the testimony offered in favor of the plaintiff, may it be said that the Carlin Co. as a matter of law is liable for the death of the plaintiff's intestate.

There is no question but that on the facts of the instant case the defendant Carlin Co. cannot be held liable on the doctrine of *respondeat superior.* Although it is true that the Carlin Co. fixed the running schedules of the steamship *Observation,* provided rules of conduct for the workmen while upon the boat, which rules were posted in a conspicuous place, and m intained one of its own employees aboard the boat to check the number of passengers, I am unable to find any facts indicative of such a supervision over the operation of the boat that it may be said that the Carlin Co. was operating the boat through its own agent or servant. The

steamship *Observation* was piloted by its owner, a duly qualified and licensed ship captain, who was not in any sense an employee of the Carlin Co.

None of the crew employed aboard the boat owed any allegiance to any one but their own direct employer from whom they received their compensation and they could neither be hired nor discharged by any one but the owner of the boat. The duty of the employee maintained by the Carlin Co. aboard the boat was solely to check the number of passengers. He had no authority to give any orders to the captain or crew of the steamship *Observation* and they were under no duty to take such orders if any were given. From the facts in the instant case it appears that there was actually no supervision over the captain or the crew of the steamship *Observation* by the Carlin Co. Even if there was, it is well-settled law that the retention of a bare supervision by an employer over a contractor does not make an independent contractor a servant of the employer so that the employer may be held liable for the latter's negligence. (*Uppington* v. *City of New York*, 165 N. Y. 222; *Herman* v. *City of Buffalo*, 214 id. 316; *Moore* v. *Wills, Inc.*, 250 id. 426.)

In the instant case Forsythe, the owner of the steamship *Observation*, was an independent contractor in sole command of the boat and unfettered by the control of the Carlin Co. Did, therefore, the Carlin Co. by engaging Forsythe, an independent contractor, to transport the workmen relieve itself from liability for any negligence occurring in such transportation? Assuming that there was negligence which caused the boiler to explode, on whom shall the law cast the burden of liability — the employer or the independent contractor? The fixing of liability where an independent contractor has been employed has been subject to much discussion and changing view. (See 41 Can. L. J. 49; 81 U. of P. L. Rev. 232; 39 Yale L. J. 861, and cases there cited. See, also, Restatement of the Law of Torts, American Law Institute, §§ 409–429.)

The general rule is that an employer is not *ordinarily* responsible for the tortious acts of an independent contractor or his servants. (*Berg* v. *Parsons*, 156 N. Y. 109, and cases there cited; *Engel* v. *Eureka Club*, 137 id. 100; *Blake* v. *Ferris*, 5 id. 48; Restatement of the Law of Torts, § 409; 2 Mechem Agency [2d ed.], § 1917; 14 R. C. L. 79.) Whether this is a desirable rule of law is open to some question. (See 37 Yale L. J. 113; 39 id. 861; 81 U. of P. L. Rev. 232.) The general rule is subject, however, to many exceptions which present questions of much nicety.

An examination of the law of this State discloses that " where the relation of master and servant or principal and agent does not exist, but an injury results from negligence in the performance of

work by a contractor, the party with whom he contracts is not responsible for his [the contractor's] negligence or that of his servants." (*Berg* v. *Parsons, supra,* at p. 112, and cases there cited.) In that case our Court of Appeals, in a four to three decision, recognized the general rule above stated and the following exceptions to this rule (at p. 115): " There are certain exceptional cases where a person employing a contractor is liable, which, briefly stated, are: Where the employer personally interferes with the work, and the acts performed by him occasion the injury; where the thing contracted to be done is unlawful; where the acts performed created a public nuisance; and where an employer is bound by statute to do a thing efficiently and an injury results from its inefficiency." To this general rule and these exceptions the courts of this State have added further exceptions. Thus we find the courts have held the employer liable where the work to be done was " inherently dangerous " (*Besner* v. *Central Trust Co.,* 230 N. Y. 357; *Engel* v. *Eureka Club,* 137 id. 100); where the employer has supplied a defective appliance (*Coughtry* v. *Globe Woolen Co.,* 56 N. Y. 124), or where the damage is due to a defect created by the contractor but which the employer might have discovered and remedied (*Ramsey* v. *National Contracting Co.,* 49 App. Div. 11; *Haefeli* v. *Woodrich Engineering Co.,* 255 N. Y. 442); or where, with knowledge that the contractor was indulging in dangerous or unnecessary practices, an employer does nothing to prevent them. (*Bergen* v. *Morton Amusement Co.,* 178 App. Div. 400; *Rosenberg* v. *Schwartz,* 260 N. Y. 162.)

Vicarious liability also has been placed upon the employer where he was under a continuing duty to use due care and has failed to show that circumstances existed which would shift the incidence of the burden to the contractor. (*Hooey* v. *Airport Construction Co.,* 253 N. Y. 486.)

Still another exception to the general rule is where the employer fails to use due care in the selection of a competent contractor. (*Fox* v. *Ireland,* 46 App. Div. 541; *Hawke* v. *Brown,* 28 id. 37; *Kelley* v. *Mayor, etc., of N. Y.,* 4 E. D. Smith, 291.) (See, also, 41 Can. L. J. 49, 159; 66 L. R. A. 941, notes.) This exception is stated in the Restatement of the Law of Torts, American Law Institute (§ 411), as follows: " One who employs an independent contractor to (a) do work which involves risk of bodily harm unless it is skillfully and carefully done, or (b) perform a duty which the employer owes to third persons, is subject to liability for bodily harm caused by the failure to exercise reasonable care to employ a competent contractor."

The courts have also evolved a group of exceptions to the general rule of no liability upon the part of the employer where a duty is owed by the employer. In the cases where a duty is imposed by statute upon an employer to perform some affirmative act, the duty is said to be non-delegable. (*Engel* v. *Eureka Club, supra.*)

In other cases the non-delegable duty has been rested upon an absolute common-law liability, such as that of the municipality to keep the streets in repair (*Storrs* v. *City of Utica*, 17 N. Y. 104); the duty to refrain from impeding the public in the use of the highway (*Schiverea* v. *Brooklyn Heights R. R. Co.*, 89 App. Div. 340) and the duty of keeping one's premises safe for those present by express or implied invitation. (*Haefeli* v. *Woodrich Engineering Co., supra; Besner* v. *Central Trust Co., supra.*)

Thus it may be seen that the courts of this State have had difficulty in determining the boundaries of the independent contractor doctrine which relieve the employer of liability and that many theories and " exceptions " have been adopted in an endeavor to circumscribe the general rule and to fix the liability upon the employer. That this is the trend of the present day decisions cannot be doubted. (*Adams* v. *Woolworth*, 144 Misc. 27; 39 Yale L. J. 861, and cases there cited.)

As was aptly stated by an eminent English authority: " The tendency of legal development is in the direction of extending rather than restricting the vicarious liability of employers of independent contractors, and it is impossible therefore to state with any confidence the exact scope and limits of this form of responsibility." (Salmond Law of Torts [7th ed.], § 33, p. 135.)

The endeavor on the part of the courts of this State to circumscribe the general rule of the independent contractor, and to extend the vicarious liability of employers of such contractors, by imposing liability on the employer where the work is " inherently " or intrinsically dangerous (*Besner* v. *Central Trust Co., supra; Engel* v. *Eureka Club, supra*), has failed to solve the problem. Disorder has arisen in the attempted application of this doctrine because of varying views as to just what work might be said to be inherently or intrinsically dangerous. (See cases cited, 23 A. L. R. 1084, note.) (Cf. *Covington & Cincinnati Bridge Co.* v. *Steinbrock*, 61 Ohio St. 215; 55 N. E. 618, with *Engel* v. *Eureka Club, supra.*)

In considering this problem the fact which stands out is that an innocent party has been injured and consequently compensation should be assured to him. Society is interested that the injured party should be recompensed for his injury. The tendency towards securing certainty of recovery for the injured person is reflected in the Workmen's Compensation Law of this State, which makes the

general employer responsible for injuries to employees of an independent contractor, who, though primarily liable, has not complied with the act. (Workmen's Comp. Law, § 56.) Through legislation such as this it may be that the exceptions to the general rule of non-responsibility may supersede the general rule itself. Such a result would not in itself be unfair. The employer gets the benefit of the work and he should not be permitted to insulate himself from all risk, especially since he is in a position to safeguard himself by securing a financially competent contractor or one who is insured.

In deciding the instant case the problem to be determined is whether the general rule relieving the employer of an independent contractor from liability precludes the plaintiff from securing relief, or whether the facts of the instant case bring it within one of the so-called " exceptions " to the general rule hereinabove discussed. If liability is sought to be imposed upon the defendant Carlin Co. on the theory that as the employer of Forsythe, the independent contractor, the owner of the steamship *Observation,* the Carlin Co. is liable for the negligence of its contractor, the plaintiff must fail under the general rule. (*Berg* v. *Parsons, supra.*) So, too, must the plaintiff fail if liability is sought to be imposed upon the defendant Carlin Co. on the theory that the work was " inherently " dangerous and as such the Carlin Co. could not relieve itself from liability, as no authority has been found which goes so far as to designate the transportation of workmen as being inherently dangerous. Such transportion may not reasonably be said to be so inherently dangerous as to fall within that exception to the general rule.

From the precedents hereinbefore referred to, it appears that an employer in this State is under a duty to use due care in employing a competent and careful contractor if he wishes to relieve himself from liability for the contractor's negligence. The failure of the employer to use due care brings him within the exception to the general rule and subjects him to liability for the negligence of the contractor. (See cases cited, *supra.*) The liability of the employer is based upon his own personal negligence in failing to exercise due care where such failure results in injury to others to whom he owes a duty of care. (Restatement of the Law of Torts, American Law Institute, note, p. 1101.)

In the instant case the defendant Carlin Co. undertook to transport the workmen, including the plaintiff's intestate, to Riker's Island. It benefited through transporting these workmen in that its financial obligation to Forsythe, the independent contractor who operated the steamship *Observation,* was lessened by the fare paid by each workman. It also benefited in that these workmen

were engaged in doing the work which it had undertaken to do or see done as general contractor. A duty was, therefore, owed to transport the workmen with due care. This duty of due care was a continuing duty. (*Hooey* v. *Airport Construction Co.*, *supra; Caspersen* v. *La Sala Brothers*, 253 N. Y. 491.) Although the transportation of passengers by boat is not inherently dangerous, it is such work as involves a risk of bodily harm unless it is skillfully and carefully done. Injury might result to a passenger unless due care is used for his safety. In securing an independent contractor to transport the workmen, including the plaintiff's intestate, the Carlin Co. employed an independent contractor to perform work which involved a duty which it owed to the workmen.

The defendant Carlin Co. was obligated to use due care in selecting a competent and careful contractor (Restatement of the Law of Torts, § 411, *supra*) if it desired to be relieved from its own liability. It was incumbent upon the Carlin Co. to secure a contractor who was competent and the employment of such a contractor presupposes that the contractor is properly equipped to do the work for which he is hired. If due care were used by the defendant Carlin Co. in its selection of Forsythe, the independent contractor, and Forsythe were competent and properly equipped to do the work, the liability of the Carlin Co. predicated upon the duty to exercise due care ceased although the duty itself did not cease. (*Hooey* v. *Airport Construction Co.*, *supra*.) In that event the Carlin Co. could not be held liable for the negligence of the contractor Forsythe. (*O'Doherty* v. *Postal Telegraph-Cable Co.*, 134 App. Div. 298.)

The plaintiff at the trial sought to prove that prior to the explosion notice was given to the defendant Carlin Co.'s superintendent that the boiler of the steamship *Observation* had deteriorated and was unsafe. For the purposes of this motion it must be assumed that proper notice was given and was given to a proper person. When the defendant Carlin Co. was advised of the defective condition of the boiler, its duty to use due care not having ceased, it was again bound to investigate whether the contractor whom it had employed actually was competent, and properly equipped, if it desired to comply with its continuing duty to use due care. Although an employer is under no duty to inspect his contractor's equipment nor to remedy any defects in his equipment (*Iacono* v. *Frank & Frank Contracting Co.*, 259 N. Y. 377), in the instant case, having received notice that the equipment of the independent contractor was defective, the knowledge thus obtained constituted notice that the contractor was proceeding in the work negligently and incompetently. The Carlin Co. was duty bound to investigate whether the

contractor in fact was competent and properly equipped to continue in the work and to take steps to avert any existing peril if he were not competent or improperly equipped to carry on the work. The duty which devolved upon the Carlin Co. as employer to engage a competent contractor if it wished to avoid liability not only required that it use due care in the selection of the contractor, but also that it take steps to prevent the contractor from continuing to be negligent when such negligence was brought to its notice or otherwise to neutralize the danger. (*Bergen* v. *Morton Amusement Co.*, 178 App. Div. 400; *Rosenberg* v. *Schwartz*, 260 N. Y. 162; *Caspersen* v. *La Sala Bros.*, 253 id. 491; *Hooey* v. *Airport Construction Co.*, *supra*.)

In the instant case a duty was owed by the defendant Carlin Co. to the workmen engaged in the work on the island and to the plaintiff's intestate as one of such workmen to transport them to Riker's Island with due care. If the defendant Carlin Co. failed to make an investigation after notice was given to it of the defective boiler and either by warning or otherwise failed to neutralize the danger (*Caspersen* v. *La Salla Bros.*, *supra*), it failed in its duty to the plaintiff's intestate to use due care (*Haefeli* v. *Woodrich Engineering Co.*, *supra*) and negligence reasonably may be inferred (*Hooey* v. *Airport Construction Co.*, *supra*). Since actionable negligence has been said to consist " in the neglect of the use of ordinary care or skill towards a person to whom the defendant owes a duty of observing ordinary care and skill, by which neglect the plaintiff, without contributory negligence on his part, has suffered injury to his person or property " (*Heaven* v. *Pender*, L. R. 11 Q. B. Div. 503), it may be said that the defendant Carlin Co. was actionably negligent to the plaintiff's intestate. The motion to dismiss the complaint is, therefore, denied.