■ EDWARD A. LACHOWICZ, Respondent, v. 34 BEAVER REALTY, INC., Appellant.— Appeal from a judgment in favor of the plaintiff entered upon the verdict of a jury at a trial term of the Supreme Court, Albany County. The defendant was the owner of a building occupied for both factory and mercantile purposes. The plaintiff was employed by a furniture company which rented the basement, the first floor and the fourth floor. Other parts of the building were leased to a printing company. There was an elevator in the building which was used both by the furniture company and the printing company. It was operated by pulling a cable which activated an electric motor. The elevator car itself had no doors but there were double doors in the elevator shaft on each floor. There was an interlocking device which prevented the elevator car from being moved when any door was open. The opening of a door broke an electrical contact and this prevented the car from being moved. However, there was an emergency switch in the elevator car which could be thrown into an " on " position, rendering the interlocking device inoperative, and making it possible to move the car despite the fact that a door was open. There were lighting fixtures in the ceiling of the corridor leading to the elevator but the bulbs had been burned out and had not been replaced for over a year before the accident. The corridor was used in common by the furniture com-

pany and the printing company. The plaintiff's version of the manner in which the accident occurred, which was apparently the version accepted by the jury, was as follows: On the morning of the accident, the plaintiff took a customer to the elevator intending to take her down to the basement to show her a piece of furniture there. There was no illumination in the corridor. Upon arriving at the elevator, the plaintiff found that one of the doors was slightly ajar. It had been the plaintiff's experience that, whenever he found a door ajar or open, the elevator car was at the landing. Relying upon this experience and upon the fact that the car could not ordinarily be moved away with the doors open, the plaintiff assumed that the car was at the landing. He pulled the door open further and stepped forward with the intention of turning on the light located in the ceiling of the elevator car but the car was not there and the plaintiff fell to the bottom of the shaft. It was subsequently discovered that the elevator car was at the fourth floor. The elevator car had apparently been moved to the fourth floor, despite the fact that the door on the first floor had been left open, by the use of the emergency switch. There were two principal charges of negligence against the defendant: (1) Inadequate lighting of the corridor, and (2) The presence of an improper type of emergency switch in the elevator car. Section 255 of the Labor Law provides: " In all factory buildings, every elevator and elevator opening and the machinery connected therewith and every hoistway, hatchway and well-hole shall be so constructed, guarded, equipped, maintained and operated as to be safe for all persons; the board shall adopt rules to carry into effect the provisions of this section." Section 257 of the Labor Law provides in part: " 1. In every factory proper lighting shall be provided during working hours for: * * * .b. All elevator cars and entrances ". Rule 424 of the rules relating to elevators in factories and mercantile establishments (Industrial Code Bulletin No. 8), promulgated by the Board of Standards and Appeals of the Department of Labor, provides in part (N. Y. Official Compilation of Codes, Rules & Regulations, vol. 3, p. 78) : " Landings. a. All entrances to the hoistway shall be properly lighted while the elevator cars are in service." Rule 456 of the rules provides in part (p. 91) : " Emergency release. a. The emergency release shall be in the car, plainly visible to the occupants of the car and reasonably, but not easily accessible to the operator. b. To operate the car under emergency conditions it shall be necessary for the operator to hold the emergency release in the emergency position. The emergency release shall be so constructed and installed that it cannot be readily tampered with or ' plugged ' in the emergency position or intentionally rendered inoperative." The proof was that the emergency switch in the elevator car in this case was of the ordinary toggle type and that it could be thrown into the " on " position and left there. It was not so constructed as to make it " necessary for the operator to hold the emergency release in the emergency position ". Under section 316 of the Labor Law, the owner of the building was responsible for the observance of section 255 of the Labor Law and for the observance of section 257 insofar as related to portions of the building used in common (*Hente* v. *Shercoop Corp.*, 289 N. Y. 140). Under rule 411 of the rules, the owner was responsible for the observance of rule 456 and the owner and tenant were both responsible for the observance of rule 424. The proof of violation of the statute and rule with respect to lighting was virtually uncontroverted but the defendant maintained that as the owner of the building it was not responsible for the violation. This contention was properly rejected by the court. As to the violation of the rule with respect to the type of emergency release to be placed in the elevator car, the only question of substance is whether the violation was a proximate cause

of the accident. Since the toggle type switch made it much easier for one operating the car to move it without first seeing to it that the shaftway doors were closed, it may fairly be concluded that the presence of that type of switch played an important part in the chain of events leading to the plaintiff's injury. It made it much more likely that the car would be moved with the door open than would have been the case if the type of switch required by the rule had been installed, making it necessary for the operator to apply continuous pressure to the switch all the time that he was operating the car. The rule was, in part, designed to guard against the very type of accident which occurred here; it was designed to make the use of the emergency release so inconvenient that the temptation to use it instead of carefully closing the doors would be reduced to a minimum. Judgment unanimously affirmed, with costs. Present — Foster, P. J., Bergan, Coon, Halpern and Zeller, JJ.