Fuld, J.
The plaintiff, employed by Mazzella Contractors, Inc., the subcontractor for excavation work upon an apartment house in the Bronx, was severely injured in the course of his employment. He brought this action against the owner of the property and the general contractor and, following a trial, had a jury verdict for $250,000 against them. Those defendants impleaded the plaintiff’s employer, but their third-party complaint was dismissed. Upon appeal, there was a modification; the judgment in the plaintiff’s favor was reversed and his complaint dismissed, the judgment dismissing the third-party complaint was affirmed.
In excavating the cellar for the new apartment building, the subcontractor left a natural earth roadway, sloping eastward from the sidewalk down into the excavated area. Used by heavy vehicles, including trucks and tractors, it was 20 to 40 feet long and 10 to 20 feet wide. The excavation was approximately 8 feet deep. Some 9 or 10 feet from the roadway was *26 a “ pier hole ”, about 6 feet square at the surface and about 4 feet deep, into which concrete was to be poured to hold the columns.
On the day of the accident, August 29, 1957, the plaintiff was operating a “ payloader ”, a tractor-type machine with a caterpillar belt. He had ascended the incline about 10 or 15 feet when, he testified, the machine being unable to “ make it ”, he stopped it, put it in reverse and started to back down. The dirt at the edge of the roadway gave way; the truck tilted to the left, fell into the pier hole and landed on top of the plaintiff who had himself fallen off the vehicle. His injuries were severe.
The plaintiff sought damages from the owner and the general contractor upon the ground that each had violated a nondelegable duty to provide supports and guards for inclined ‘[1] runways ” and ‘ ‘ ramps ’ pursuant to the Labor Law and a rule promulgated by the State Board of Standards and Appeals. Section 241 of the Labor Law requires owners and contractors to comply with rules made by the board “ for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith”. The rule here relied upon, rule 23-35.1, provides that
‘ ‘ All runways and ramps shall be substantially constructed and securely braced and supported. Runways and ramps for the use of heavy vehicles shall have a width of not less than 12 feet and shall be provided with timber curbs not less than 8" x 8" placed parallel to, and secured to, the sides of the runway or ramp. The floor shall be of not less than three inch planking.” (N. Y. Off. Comp, of Codes, Rules & Regulations, 7th Supp., p. 425.)[1]
The trial court instructed the jury that section 241 was applicable and that it authorized the State Board to make rules for the *27 protection of workmen, including rule 23-35.1. The statute and rule, the trial ¡judge declared, cast “ a nondelegable duty upon both an owner and the general contractor ” and the ‘ ‘ failure to comply is a violation of a statutory duty and is negligence He added that, if the jury found that the accident resulted from the defective construction of the ramp, its verdict was to be for the plaintiff. The trial judge also charged that, since a violation of section 241 was the basis of the plaintiff’s claim, “ contributory negligence on the part of the plaintiff is not a defense.”
There was, as indicated, a verdict for the plaintiff, but on appeal the resulting judgment in his favor was reversed and the complaint dismissed on the ground that the rule invoked was applicable to ‘ ‘ constructed and built ramps ’ ’ and not to ‘ ‘ natural earth ’ ’ runways or ramps. Even if, however, the rule Avere applicable, the court went on to say, the violation of a rule rather than of a statute did not give rise to liability absent negligence; consequently, the trial court should have submitted to the jury the issues of negligence and contributory negligence.
Rule 23-35.1 speaks of “runways” and “ramps” and, in our opinion, the terms may not reasonably be construed to exclude those made of natural earth; considered both as a matter of English and of policy, the term “ramp” or “ runway ’ ’ should be read to include an earthen runway as well as one artificially constructed of wood or steel or other material. The word “ ramp ” is variously defined as an “ inclined runway ” (Rules of the New York City Board of Standards and Appeals, rule 1.20) or a “ sloping roadway” (Webster’s New Collegiate Dictionary [2d ed., 1951], p. 700). Neither of those definitions nor, for that matter, any other excludes the type of runway here involved.
That the Board of Standards and Appeals did not expressly refer to “ earthen ” ramps or runways does not require us to find that the roadway here involved was not encompassed by the term employed. Quite obviously, the concern of the board was for the safety of the workmen using heavy vehicles to get from one level of a structure to another and, to that end, it was intent upon assuring that the roadway to be traversed was substantially prepared. The safety factor is no less *28 important because the runway is constructed of earth rather than of wood. Nor is there any reason why an earthen runway or ramp could not be — to quote the language of the rule — “ supported ” or “ braced ” or why “ timber curbs ” could not be attached to such supports or braces. Indeed, other rules of the State Board (rules 23-11.2 and 23-11.3) provide for “ bracing ” of open trenches and “ excavations five feet or more in depth ”.
The defendants contend that this construction of the rule would require supports and curbs at every point in an excavation area wherever any kind of slope existed between different levels of excavated earth over which vehicles were required to pass and would result in an impossible and impracticable burden. In support of their contention, they urge that the runway or ramp was simply a work facility or device within the exclusive control of the subcontractor-excavator, where an owner or general contractor could not reasonably be expected to supervise or take special measures for the protection of workmen.
We find no merit in such an argument. In the first place, the ramp was used by other subcontractors in addition to the one in charge of excavation. In the second place, a consideration of the differences in the employer’s liability under section 240 and that of owner and general contractor under section 241 makes it clear that the roadway in question was not a work facility of a subcontractor but a protective guard for workmen in situations covered by section 241 where open spaces between floors or stories create hazardous conditions. We explored these differences in Thomas v. City of New York (9 N Y 2d 625), which involved an employer’s failure to supply a “ stay” as required by section 240. The latter section places upon the employer-subcontractor the burden of furnishing work devices such as ‘ ‘ scaffolds ’ ’ and ‘ ‘ stays ’ ’— devices which bear a close relation to the actual performance of the subcontractor’s job. Section 241, on the other hand, deals with far more wide and open areas of protection, its first five subdivisions being concerned with the duty of safeguarding openings in floors and shaftways and the planking over of open spaces, a duty similar to that of protecting common walks and ways which is ordinarily imposed upon the owner and general contractor. When, therefore, section 241 additionally requires owners and general *29 contractors to comply with rules of the board for the protection of workmen, it is reasonable to conclude that the Legislature intended them to comply with any rules which involve the protection of employees working in open areas between floors or stories.
A rule for the safe construction of ramps between one floor and the next, relating as it does to the open and visible dangers involved in passing from one elevation to another, is one with which those in general charge of operations might properly be expected to comply. Slight variations in surface levels, however, which arise as the soil is being dug out of the excavation, have to do with the immediate details of the job and their safe construction is rightly made the responsibility of the excavation subcontractor. Were an owner or general contractor to attempt to supervise such work facilities, it would result in a division of authority between the subcontractor and his superiors in an area of his particular competence which would be likely to cause confusion or unreasonably impede the progress of the job.
In our view, therefore, the trial court correctly concluded that the roadway from which the plaintiff’s truck fell was covered by rule 23-35.1 of the State Board. However, the court did err, as the Appellate Division held, in charging the jury that the defendants’ violation of the rule constituted negligence as a matter of law and that the plaintiff’s contributory negligence, if there was any, was no defense. We have repeatedly held that the violation of a rule of an administrative body, lacking the force and effect of a substantive legislative enactment, “ did not establish negligence per se but was simply some evidence of negligence which the jury could take into consideration with all the other evidence bearing on that subject.” (Schumer v. Caplin, 241 N. Y. 346, 351; see, also, Major v. Waverly & Ogden, 7 N Y 2d 332, 336; Teller v. Prospect Heights Hosp., 280 N. Y. 456, 460.) This being so, the issue of the negligence of the defendants Large Scale Development Corporation and Wood-lawn Veterans Mutual Housing Co., as well as the issue of contributory negligence on the part of the plaintiff, should have been presented to the jury.
The complaint of the third-party plaintiffs Large Scale Development Corporation and Woodlawn Veterans Mutual Housing Co. against the third-party defendant Mazzella Con *30 tractors was properly dismissed. In the event that the plaintiff succeeds upon a new trial, Large Scale and Woodlawn Veterans, by their violation of the rules, would have to be held “active tort-feasors” who breached a “nondelegable duty” and, in consequence, would not be entitled to recovery over. (Rufo v. Orlando, 309 N. Y. 345, 350; Semanchuck v. Fifth Ave. & 37th St. Corp., 290 N. Y. 412; Walters v. Rao Elec. Equipment Co., 289 N. Y. 57.)
The judgment of the Appellate Division should be modified by reversing so much thereof as dismissed the complaints against defendants-respondents Large Scale Development Corporation and Woodlawn Veterans Mutual Housing Co. and a new trial granted, with costs to abide the event. As so modified, the judgment should be affirmed, with costs to the third-party defendant-respondent against the third-party plaintiffs-appellants.
Chief Judge Desmond and Judges Froessel, Burke and Foster concur with Judge Fuld; Judges Dye and Van Voorhis dissent and vote to affirm for the reasons stated in the unanimous opinion in the Appellate Division.
Judgment accordingly.

. Rule 7.7 of the rules promulgated by the New York City Board of Standards and Appeals is virtually identical with the quoted rule of the State Board and, since we believe — contrary to the defendants’ contention — that the rules of the State Board govern buildings within the city of New York, there is neither need nor occasion to discuss section 666 of the New York City Charter or the rules of the city board.