MARGARET DAVIS, as Administratrix of the Estate of THOMAS DAVIS, Deceased, Respondent, v. CARISTO CONSTRUCTION CORP., Appellant-Respondent. BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant, and JOHN GREENE, Respondent.

CARISTO CONSTRUCTION CORP., Third-Party Plaintiff-Appellant, v. ARTISTIC BRONZE TABLET CO., INC., Third-Party Defendant-Respondent. (Action No. 1.)

KENNETH TORMEY et al., Respondents, v. JOHN GREENE, Defendant, and CARISTO CONSTRUCTION CORP., Appellant.

JOHN GREENE, Third-Party Plaintiff, and CARISTO CONSTRUCTION CORP., Third-Party Plaintiff-Appellant, v. ARTISTIC BRONZE TABLET CO., INC., Third-Party Defendant-Respondent, and JOHN GREENE, Third-Party Defendant. (Action No. 2.)

First Department, June 13, 1961.

*Lillian E. Cuff* of counsel (*Hobart R. Marvin, Francis J. Healy* with her on the brief; *Hanlon & Daw,* attorneys), for Caristo Construction Corp., appellant-respondent.

*Joseph A. Doran* of counsel (*Seymour B. Quel* with him on the brief; *Charles H. Tenney, Corporation Counsel*), for Board of Education of the City of New York, appellant.

*Charles Kramer* of counsel (*Benjamin H. Siff* with him on the brief; *Kramer & Dillof,* attorneys), for Margaret Davis, respondent.

*Frank Marcus* for John Greene, respondent, in Action No. 1.

*Maxwell J. Eile* of counsel (*Paul P. Meltzer,* attorney), for respondents in Action No. 2.

*Harold Klein* of counsel (*Harry Schechter, Raymond C. Green* with him on the brief; *Charles G. Tierney,* attorney), for Artistic Bronze Tablet Co. Inc., third-party defendant-respondent.

BOTEIN, P. J. Plaintiff's intestate, Thomas Davis, was killed, and plaintiffs George Henry and Kenneth Tormey were injured when a scaffold on which they were working during the construction of a school building broke. Plaintiff Robert Henry, who was assisting in the work, was also injured. All four were employed by Artistic Bronze Tablet Co., Inc. (Artistic), a subcontractor of defendant Caristo Construction Corp. (Caristo), which was the general contractor. Artistic had entered into a subcontract with Caristo by which it agreed to furnish the labor, materials and equipment for the performance of the bronzework and aluminum work on the job. Defendant Board of Education of the City of New York was the owner of the building under construction. An action to recover for the wrongful death of Davis was brought against Caristo, the Board of Education and one John Greene, who was the owner of the scaffold which he rented to Artistic. The other three plaintiffs sued Caristo and Greene in a separate action (Action No. 2).

The actions were consolidated and tried, resulting in judgments in varying amounts for the four plaintiffs against Caristo and Board of Education. The cross complaints or third-party complaints of Caristo against Artistic and Greene in the Davis action, and against Artistic in Action No. 2 were dismissed, as was the cross complaint of Board of Education against Caristo in the Davis action. Board of Education and Caristo appeal from the judgment entered in favor of plaintiffs and from the above-mentioned dismissals of their cross complaints or third-party complaints.

Upon the trial of the consolidated action it was undisputed that Caristo was to perform no part of the work subcontracted to Artistic, and that it supervised Artistic's work only to the extent of satisfying itself that the contractor performed the work in accordance with plans and specifications and in a prompt and diligent manner. One Koehler was the superintendent for Caristo, and Macanna was the inspector on the job for the board. It was the latter's duty to see to it that the general contractor and all others on the job did their work in accordance with plans and specifications.

The scaffold, which was rented by Artistic from Greene, was required in order to place the ornamental ironwork on the windows of the third floor. When it arrived on the job, Koehler complained to Macanna that it was inadequate for the heavy work contemplated and fit only for light burdens. When Koehler and Macanna spoke to Brasen, Artistic's superintendent, however, he said that he thought the scaffold was absolutely safe, that his men were riggers and knew how to erect and use a scaffold. Koehler testified that when he persisted he was told to mind his own business.

There can be no doubt, upon this record, that Davis and the injured plaintiffs took their orders from Brasen, their superintendent, and that he exclusively planned and directed the progress of Artistic's work. He supervised the testing, assembling, rigging and raising of the scaffold to the third floor; and he ordered that the scaffold be used.

The scaffold was supposed to be rigged with one-quarter-inch cables designed to go under the side rungs or runners, as well as with three Y-irons, one for each end and one for the center. When actually rigged, however, under the direction of Brasen, only the two end Y-irons were attached to the scaffold, and the cable was placed on top. If put underneath the scaffold, it would have operated as an extra brace.

While suspended outside a third-floor window the scaffold broke and opened in the center, Davis falling to his death and the others suffering injuries.

The gist of the evidence presented in support of plaintiffs' causes of action is found in a conversation allegedly overheard by Tormey, one of plaintiffs, among Koehler, Macanna and decedent Davis on the day prior to the accident. His testimony was very vague and indefinite. According to Tormey, Davis had remonstrated about using the scaffold and Koehler had answered " that the job has to get along, that we should use the scaffold till we get another one." When asked whether he

heard Macanna, the superintendent for the board, say anything, Tormey testified, "He nodded. He seemed to agree with it." At the time of the alleged conversation the scaffold had not been assembled.

In order to find defendants liable either for negligence at common law or for violation of the provisions of section 240 of the Labor Law, plaintiffs in the posture of this case must show that defendants directed plaintiffs in the aspect of the work that led to the accident, or had assumed control over that phase of the work (*Iacono* v. *Frank & Frank Contr. Co.,* 259 N. Y. 377; *Kaplan* v. *48th Ave. Corp.,* 267 App. Div. 272; *Manguso* v. *Thirty-Third Equities,* 286 App. Div. 70; *Komar* v. *Dun & Bradstreet Co.,* 284 App. Div. 538). Certainly no such prima facie showing has been made against the board, upon testimony of an enigmatic nod that could convey a variety of meanings, and upon the witness' conclusion that Macanna "seemed to agree with" Koehler's statement.

Nor is the testimony as to Koehler's assuming direction or control of the work believable upon this record. In view of the testimony by plaintiffs' own witnesses as to Artistic's tight control of the part of the job it had assumed to perform, it strains credulity to find that Koehler made the statement attributed to him; or that if he did, Davis and his coworkers would regard it as a direction they had to follow. The verdict rendered against Caristo was plainly against the weight of the credible evidence.

Also, the court was requested to charge that if "subsequent to the time of the alleged conversation between the superintendent of Caristo and the deceased, the scaffold was thereafter improperly put together, and that the improper putting together of the scaffold was the sole proximate cause of the accident", they could not find against defendants. The court refused to charge as requested. We believe the refusal constituted error and that this was a proper request. The failure to charge as requested permitted the jury to find defendants liable even if the sole proximate cause of the accident had been an improper assembly of the scaffold by the subcontractor, Artistic — in which event defendants could not be held liable (*Klutt* v. *Citron,* 2 N.Y 2d 379; *Mendes* v. *Caristo Constr. Corp.,* 5 A D 2d 268).

Lastly, the indemnification agreement furnished by Artistic to Caristo expressed an unequivocal obligation to indemnify Caristo against its own active negligence, whether such negligence was wholly or partially responsible for plaintiffs' injuries

or whether the negligence consisted of the violation of a non-delegable duty. It was error to dismiss the cross complaint based on this agreement (see *Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N. Y. 36; *Salamy* v. *New York Cent. System*, 1 A D 2d 27).

Accordingly, the judgment appealed from should be reversed, on the law and the facts, the complaint against defendant Board of Education dismissed, with costs, the judgment against defendant Caristo should be reversed and a new trial ordered, with costs to abide the event, and the judgment in favor of Artistic on both cross complaints should be reversed and a new trial ordered, with costs to Caristo, and the judgment in favor of John Greene upon the cross complaint in Action No. 1 affirmed.

EAGER, J. (dissenting). I concur in the reversal of the judgment in favor of the plaintiffs and in the dismissal of the complaint as against the defendant Board of Education. I dissent, however, insofar as the court would grant a new trial as to the defendant Caristo; and I would dismiss the complaint also as to said defendant.

The defendant Caristo was the general contractor. The decedent and the plaintiff workmen were employees of the subcontractor Artistic and were injured because of the collapse of a scaffold procured, assembled and erected by said subcontractor. At the time of the accident they were working on the scaffold at the direction of and under the supervision of one Brasen, the superintendent for their employer, the subcontractor. As stated in the majority opinion, there can be no doubt that they took their orders from Brasen, that he ordered that the scaffold be used and that he exclusively planned and directed the work at the time of the accident. This being so, there is no support for a verdict for the plaintiffs against the defendant Caristo either on the theory of violation of the provisions of section 240 of the Labor Law or on the theory of common-law negligence.

It is settled, that the provisions of said section 240 with reference to the furnishing of scaffolds do not apply to a general contractor who is not directing the particular work involving the use of a scaffold by a subcontractor. Under the section, the duty of furnishing a proper scaffold is placed upon the immediate employer of the labor using the same, and in this case, this would mean the subcontractor Artistic which employed the decedent and the other injured workmen engaged thereon at the time of the accident. (*Komar* v. *Dun & Bradstreet Co.*, 284 App. Div. 538, 541; *Gambella* v. *Johnson & Sons*, 285 App. Div.

580; *Mendes* v. *Caristo Constr. Corp.,* 5 A D 2d 268, 6 A D 2d 673, affd. 6 N Y 2d 729.)

To make out a case, the plaintiffs rely upon an alleged statement by Caristo's superintendent, Koehler, to the decedent and the other workmen that " we should use the scaffold till we get another one." Such statement, however, was made the day before the accident and at a time when the materials for the scaffold were resting on the ground and unassembled. As a matter of law, such statement does not have the effect of putting Caristo in the position of a " person employing or directing " these workmen the next day in their work on the scaffold, that is, within the meaning of section 240. What was said in *Blackwood* v. *Chemical Corn Exch. Bank* (4 A D 2d 656, 657) is applicable. There this court, in discussing whether or not the defendant (an owner) was directing plaintiff (an employee of a cleaning contractor) within the meaning of section 240 of the Labor Law, held *"Kluttz* v. *Citron* (2 N Y 2d 379, 383) indicates that the test of direction is supervision relative to the manner or method of performance of the work to be done; under *Kluttz*, there is no direction within section 240 if performance of the work is left solely to the judgment and experience of the independent contractor. The retention of the limited power of general supervision to ascertain whether the cleaning contracted for was being done is not the equivalent of direction within the meaning of section 240. (See *Moore* v. *Charles T. Wills, Inc.,* 250 N. Y. 426, 429.) "

Furthermore, there is no support for a recovery against the defendant Caristo on the theory of common-law negligence. Under the circumstances, there was no duty upon Caristo to see to it that the scaffold was properly assembled the following day or that it was not subjected to excessive weight or to use by an excessive number of men. " A general contractor is not obliged to protect employees of his subcontractors against the negligence of their employers ". (*Gambella* v. *Johnson & Sons, supra,* p. 582.) And, the alleged statement of Caristo's superintendent was not tantamount to a negligently given direction which the workmen may be said to have followed or to a negligently given assurance of safety upon which the workmen may be said to have relied. (See *Broderick* v. *Cauldwell-Wingate Co.,* 301 N. Y. 182.) This is so, as a matter of law, because, in the use of the scaffold by the workmen in the particular task at the time of the accident on the following day, they were acting pursuant to the directions of their employer. They were carrying out the orders of their employer and not acting or relying upon the alleged statement of Caristo's superintendent.

Finally, there was no causal relation between the alleged statement of Caristo's superintendent and the cause of the injury of the workmen, namely, the collapse of the scaffold due either to the improper assembling of the same or the placing thereon of an excessive number of men or weight.

If a case had been made out by the plaintiffs against the defendant Caristo, I would concur in the majority opinion that it was error to dismiss the cross complaint of Caristo against Artistic.

BREITEL and BASTOW, JJ., concur with BOTEIN, P. J.; EAGER, J., dissents in opinion, in which McNALLY, J., concurs.

Judgment appealed from reversed, on the law and on the facts, the complaint against defendant Board of Education dismissed, with costs, the judgment against defendant Caristo reversed and a new trial ordered, with costs to abide the event, and the judgment in favor of Artistic on both cross complaints is reversed and a new trial ordered, with costs to Caristo, and the judgment in favor of John Greene upon the cross complaint in Action No. 1 is affirmed. Settle order on notice.