369 F.2d 288
 Agnes LIPKA, as Administratrix of the Estate, Goods, Chattels and Credits of Walter J. Lipka, Sr., Deceased, and individually as Widow and Next of Kin of said Walter J. Lipka, and John E. ABBOTT, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee,
v.
VAUGHN CONSTRUCTION CORPORATION, Third-Party Defendant.
Olga SICKO, as Administratrix of the Estate, Goods, Chattels and Credits of John Sicko, Deceased, and individually as Widow and Next of Kin of said John Sicko, Deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee,
v.
VAUGHN CONSTRUCTION CORPORATION, Third-Party Defendant.
Maurice SMITH, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee,
v.
VAUGHN CONSTRUCTION CORPORATION, Third-Party Defendant.
 No. 101.
 No. 108.
 No. 109.
 Docket 30328.
 Docket 30329.
 Docket 30330.
 United States Court of Appeals Second Circuit.
 Argued October 26, 1966.
 Decided December 2, 1966.
 
 George S. Lettko, Troy, N. Y., for plaintiffs-appellants.
 Martin Jacobs, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Dept. of Justice, Washington, D. C., and Justin J. Mahoney, U. S. Atty. for Northern Dist. of New York, Albany, N. Y., on the brief), for defendant-appellee.
 J. Joseph Murphy, Troy, N. Y. (Connolly, Mirch & Murphy, Troy, N. Y., on the brief), for plaintiff-appellant Olga Sicko.
 Thomas M. Monahan, Jr., Troy, N. Y., for plaintiff-appellant Maurice Smith.
 Before LUMBARD, Chief Judge, and MOORE and KAUFMAN, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 Plaintiffs in these three consolidated actions, brought in the Northern District of New York against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, appeal from judgments entered for the United States after a trial on the merits.
 
 
 2
 The actions arise from the collapse on March 16, 1963 of a temporary dewatering cofferdam built by the Vaughn Construction Corporation (Vaughn) to enable it to dry pour a concrete guide wall, as part of a contract with the U. S. Army Corps of Engineers to modify the upstream guide walls and approach channels of the Hudson River at the Troy Lock and Dam at Troy. Plaintiffs are two employees of Vaughn who were injured, and the representatives of two who were killed, in the collapse of the cofferdam.
 
 
 3
 These actions were tried before Circuit Judge Marshall, sitting by designation without a jury. After the trial, upon Judge Marshall's resignation to become Solicitor General of the United States, they were assigned to Judge Cashin, who by agreement of all the parties decided them on the record made before Judge Marshall.[1] Judge Cashin found that Vaughn negligently failed to add an additional row of horizontal walers and braces to the steel pile cofferdam as it excavated the river bed within the dam, and that this negligence was "the direct cause of the failure of the dam." However, he held that Vaughn was an independent contractor, for whose negligence the United States was not liable, because he found that except for one "isolated occurrence" the United States did not exercise "actual control over the details of performance" by Vaughn. He also held that, since Vaughn was responsible under the contract for designing and building the cofferdam, this finding relieved the United States of liability for the defective cofferdam under N. Y. Labor Law, McKinney's Consol. Laws, c. 31, §§ 240, 241. Finally, Judge Cashin held as a matter of law, without making any findings of fact, that the United States was not liable either on the theory that Vaughn was carrying on an inherently dangerous activity, or on the theory that it was an independent contractor negligently selected by the United States. 249 F.Supp. 213 (N.D.N.Y.1965). We uphold Judge Cashin's finding that Vaughn was an independent contractor, and affirm the judgments.
 
 
 4
 Appellants urge that we may reverse Judge Cashin's finding that Vaughn was an independent contractor without holding it "clearly erroneous," see Fed.R.Civ. P. 52(a), since it was made upon a written record and therefore cannot have been influenced by the demeanor of the witnesses. Cf., e. g., United Nations Korean Reconstruction Agency v. Glass Prod. Methods, Inc., 291 F.2d 168, 172 (2 Cir. 1961); Orvis v. Higgins, 180 F. 2d 537 (2 Cir.), cert. denied, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950). We need not decide whether we have this power where a case has been assigned to a second judge for decision on the record made at a trial before the first judge, because a review of the transcript and exhibits which were before Judge Cashin has convinced us that this finding was correct.
 
 
 5
 The contract between Vaughn and the Corps of Engineers reserved broad supervisory powers to the Corps. It specified that the east guide wall should be poured dry, and provided that
 
 
 6
 "the methods of dewatering shall be subject to the approval of the Contracting Officer, but such approval will not relieve the contractor of responsibility for the adequacy of the work."
 
 
 7
 It also contained an "accident prevention" clause, binding Vaughn to follow the Corps of Engineers safety manual and any additional safety measures the Contracting Officer determined to be reasonably necessary, and empowering the Contracting Officer to order compliance with these safety measures and to stop work if it was not forthcoming. Finally, the contract provided that Vaughn's superintendent should be "satisfactory to the Contracting Officer."
 
 
 8
 Three employees of the Corps of Engineers dealt directly with Vaughn on the Troy Lock and Dam project. The Contracting Officer's representative, vested with all his powers except as to modification and termination of the contract, was the Resident Engineer of the Corps in Albany, New York, Ambrose F. Brennan, a licensed civil engineer. Brennan's assistant, responsible for supervising about ten or twelve contracts in addition to that with Vaughn, was Remo J. Lusardi, a civil engineer. Below Brennan and Lusardi was the job site inspector, Hercules J. Platts, who had some construction experience but was not an engineer. Platts spent his full time at the Troy Lock and Dam project site, and had the power to direct Vaughn to comply with the contract specifications and, in an emergency, to stop work if an obviously unsafe condition was not corrected.
 
 
 9
 Vaughn, which had already fallen behind schedule, began to drive steel pilings for the east guide wall cofferdam on January 14, 1963. On January 21, Brennan requested a design of the proposed cofferdam, and received a sketch showing a cofferdam composed of a single row of pilings. Brennan disapproved this sketch, advised Vaughn to use a double row of pilings, and sent Vaughn photographs of a cofferdam successfully used by another contractor. He also ordered Vaughn not to dewater the cofferdam until it produced a more detailed design. Such a design was not forthcoming until after the cofferdam collapsed, but Vaughn proceeded to build a cofferdam with a double row of pilings enclosing the work area, with the tacit acquiescence of Brennan and Lusardi. On one occasion, Vaughn's superintendent demonstrated to Lusardi how far he was driving the pilings. While they did not disapprove the cofferdam, the Corps representatives repeatedly ordered Vaughn's employees to wear hard hats, to place an adequate number of ladders inside the cofferdam, and to observe other basic safety precautions.
 
 
 10
 Vaughn began to dewater the cofferdam late in February 1963, and soon ran into difficulties. On February 27, Platts telephoned Lusardi that the weld between the walers at the southwest corner of the cofferdam had snapped, and Lusardi told him to direct Vaughn to reweld it and place a knee brace there. On March 1, Vaughn dewatered to a depth of seven feet inside the cofferdam without adding a second row of walers and braces, and the south wall of the cofferdam moved two feet to the north over the weekend between March 1 and March 4, and another eighteen inches while Platts watched on March 5. Lusardi, visiting the project on March 6, directed Vaughn not to dewater the cofferdam until it was strengthened. He also found that Vaughn had wedged a steel beam vertically between the southwest corner of the cofferdam and the emergency bulkhead panels protecting the Troy Lock immediately to the south. Concerned that the wedged beam would transmit the stresses on the cofferdam to the bulkhead panels and damage them, Lusardi ordered Vaughn to remove it. Vaughn flooded the cofferdam and replaced the pilings of its south wall with stronger ones extracted from the north wall but did not remove the wedged beam until March 11, when Brennan and Lusardi again visited the project and ordered the beam removed.
 
 
 11
 By this time Vaughn was dewatering down to the river bed. On Friday, March 15, it had installed the second and third rows of horizontal walers and braces and had begun to excavate the river bed. Platts urged Vaughn to add temporary bracing, but on Saturday, March 16, without doing so, Vaughn excavated the river bed within the cofferdam to a depth of at least five feet below the third row of walers, some twenty-two feet below the river level. At about 12:40 P.M. on March 16, the west wall of the cofferdam buckled with a roar and collapsed against the wooden pilings in the center of the cofferdam, flooding the cofferdam, pinning Walter Lipka below it, and injuring the three other employees. All the expert witnesses who testified at the trial stated, and Judge Cashin found, that the principal cause of the collapse was Vaughn's excavating too far below the third row of walers without adding any additional walers or braces.
 
 
 12
 On this record, Judge Cashin correctly held that under New York law Vaughn was an independent contractor because the United States could not and did not direct the details of its performance. Except possibly for Lusardi's direction of February 27 to place a knee brace where the weld had snapped at the southwest corner of the cofferdam, all of the Corps' interventions in the construction of the cofferdam were exercises of its reserved contractual powers to insure compliance with specifications, to disapprove unsuitable methods of dewatering, and to rectify obviously unsafe conditions. In the face of the voluminous and uncontradicted testimony that Vaughn alone directed its employees' activities, worked out the structure of the cofferdam, and determined when and how to excavate within it, the exercise of these reserved powers is insufficient to destroy Vaughn's status as an independent contractor.
 
 
 13
 Reservation of the power to control a contractor's compliance with the contract's specifications does not make the contractor an employee. E. g., Wallach v. United States, 291 F.2d 69 (2 Cir.), cert. denied, 368 U.S. 935, 82 S.Ct. 373, 7 L.Ed.2d 197 (1961); Olsen v. Chase Manhattan Bank, 9 N.Y.2d 829, 175 N.E.2d 350, 215 N.Y.S.2d 773 (1961) (per curiam). Nor, under the circumstances of this case, did the institution of an accident prevention program constitute an undertaking by the Corps to prevent all accidents which might occur due to the contractor's negligence. Cf. Blaber v. United States, 332 F.2d 629 (2 Cir. 1964). The courts which have considered the accident prevention program of the Corps of Engineers have held that it does not transform contractors with the Corps into employees of the United States. Grogan v. United States, 341 F.2d 39 (6 Cir. 1965); Kirk v. United States, 270 F.2d 110, 117-118 (9 Cir. 1959); cf. United States v. Page, 350 F.2d 28 (10 Cir. 1965), cert. denied, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); Buchanan v. United States, 305 F.2d 738 (8 Cir. 1962); Richardson v. United States, 251 F.Supp. 107 (W.D.Tenn.1966).
 
 
 14
 The facts of record in this case illustrate the soundness of this holding. The fact that Vaughn had excavated too far without further bracing on the morning of Saturday, March 16, which Judge Cashin found caused the collapse later that day, could have been established only by an engineering stress analysis. But Platts, the Corps' job site inspector, who suspected that more bracing was needed and urged Vaughn to provide it, was not an engineer. Lusardi and Brennan, who were engineers, also supervised so many other projects that they could visit the Troy Lock and Dam at most a few times a week, and they were not there on March 16. Thus the Corps could not adequately check the technical safety of every detail of Vaughn's performance, and it is clear that it did not undertake to do so. During 1962 Brennan was in charge of 57 or 58 employees, only three or four of whom were engineers. This fact indicates that the Corps' staffing of the Troy project was typical and that the operations of the Corps would require radical revision if it were to be charged with full responsibility for the safety of its contractors' employees.
 
 
 15
 Thus, as Judge Cashin found, the United States is not liable as an employer for Vaughn's negligence. Nor is it liable for any negligence of its employees in intervening on February 27, March 6, or March 11, as appellants alternatively argue, because none of these interventions was shown to be a cause of the collapse. Cf. Davis v. Caristo Constr. Corp., 13 A. D.2d 382, 216 N.Y.S.2d 765 (1st Dept. 1961).
 
 
 16
 These findings relieve the United States of liability under N.Y. Labor Law, §§ 240, 241, since § 240 imposes liability only upon "a person employing or directing another," and § 241, which in terms reaches "owners, contractors, and subcontractors," has been interpreted so as to hold an owner liable for a defective temporary structure built by a contractor only where the owner has assumed control of the contractor's operations. Wright v. Belt Associates, Inc., 14 N.Y. 2d 129, 198 N.E.2d 590, 249 N.Y.S.2d 416 (1964); see Conte v. Large Scale Dev. Corp., 10 N.Y.2d 20, 29, 176 N.E.2d 53, 56, 217 N.Y.S.2d 25, 29 (1961) (dictum).
 
 
 17
 Appellants contend that the 1962 revision of § 241, L. 1962, c. 450, effective October 1, 1962, was intended to impose liability upon an owner even absent such control. We cannot agree that any such absolute liability was intended. The new § 241 and the old are both addressed to owners and contractors, and neither indicates which bears the primary duty. There is no indication in the Governor's message approving the 1962 revision, 2 McKinney's 1962 Sess. Laws, p. 3633, that it was intended to render owners equally liable with their independent contractors. Finally, the only case under the new § 241 cited by appellants, Curtis v. State (N.Y.Ct. Claims June 10, 1966), states in dictum that "the equipment, method and work spaces of a sub-contractor or contractor are ordinarily his own responsibility." We conclude that the interpretation of the old § 241 in Wright v. Belt Associates, Inc., supra, will be followed under the new § 241.
 
 
 18
 Appellants argue finally that Judge Cashin erred in dismissing as a matter of law their contentions that the United States is liable for Vaughn's negligence because it negligently selected an incompetent contractor,[2] or because the cofferdamming operation was inherently dangerous. We hold that under New York law neither theory is available to employees of an independent contractor whose negligence caused the accident. This Court has twice held that New York does not allow an independent contractor's employees to recover from the contractee on the ground that the work contracted for was inherently dangerous, Galbraith v. United States, 296 F.2d 631 (2 Cir. 1961); Wallach v. United States, 291 F.2d 69 (2 Cir.), cert. denied, 368 U.S. 935, 82 S.Ct. 373, 7 L.Ed.2d 197 (1961). Although no New York court has yet considered an employee's claim that his employer was negligently selected,[3] the courts which have considered such claims likewise hold that an employee cannot recover on this ground. E. g., Matanuska Elec. Ass'n, Inc. v. Johnson, 386 P.2d 698 (Alaska 1963); Salmon v. Kansas City, 241 Mo. 14, 145 S.W. 16, 39 L.R.A., N.S., 328 (1912); see Restatement (Second), Torts § 411 (contractee liable only to "third persons"). The principal justification for denying recovery to employees of an independent contractor on either of these theories is that they are covered by workmen's compensation, and that "it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work." Special Note, Restatement (Second), Torts 17-18 (Tent. Draft No. 7, 1962). For these reasons, Judge Cashin correctly held as a matter of law that neither theory is available to appellants.[4]
 
 
 
 Notes:
 
 
 [1]
 The United States asserted a third-party claim against Vaughn in each action. Judge Cashin ordered a separate trial of the third-party claims, depending on the outcome of the actions against the United States, and Vaughn is not a party to this appeal
 
 
 [2]
 We do not overlook the fact that there was disagreement within the Government as to whether Vaughn was competent to perform the Troy contract. The Corps' pre-award survey recommended that the contract not be awarded to Vaughn citing unfavorable surveys of the capacity of Vaughn's president. Even after the Small Business Administration issued Vaughn a certificate of capacity and credit to perform the contract pursuant to 72 Stat. 391 (1958), 15 U.S.C. § 637(b) (7), the New York District Engineer of the Corps unsuccessfully sought authority to reject Vaughn's bid
 
 
 [3]
 Kuhn v. P. J. Carlin Constr. Co., Inc., 154 Misc. 892, 278 N.Y.S. 635 (Sup.Ct. 1935), aff'd mem., 248 App.Div. 582, 288 N.Y.S. 1110 (1st Dep't 1936), rev'd on another ground, 274 N.Y. 118, 130-134, 8 N.E.2d 300, 305-307 (1937), held that a general contractor might be liable for the death of a subcontractor's employee while being ferried to work ifanother subcontractor, who provided the ferry service, was incompetent and had been negligently retained. But as to the allegedly incompetent subcontractor the employee was, in effect, a member of the public, and we do not read this case as opposed to our holding here.
 
 
 [4]
 Since we hold that under New York law appellants cannot recover on the ground that Vaughn was negligently selected, we need not consider whether, as Judge Cashin held, the decision to award the contract to Vaughn was an exercise of a "discretionary function," for which the United States is not liable under the Federal Tort Claims Act. Cf. 28 U.S.C. § 2680(a)
 We also need not consider whether, if New York law permitted appellants to recover under New York Labor Law, §§ 240, 241 or on the theory that Vaughn was negligently selected or that the cofferdamming was inherently dangerous, imposition of such liability would be barred by 28 U.S.C. § 2671, which in effect excludes from the category of "employees of the Government," for whose torts the United States may be made liable by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, "any contractor with the United States." Cf., e. g., United States v. Page, 350 F.2d 28, 34 (10 Cir. 1965), cert. denied, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966).