Robert H. Wagner, J.
This case was tried before me without a jury. On the testimony and the evidence and upon due consideration, I make the following findings of fact:
In February, 1973, one Henry A. Calleri applied for and received a loan in the amount of $5,000 from the plaintiff, Security Trust Company of Rochester. The proceeds of the loan were first used to pay a previous indebtedness to the bank in the amount of $3,900.94. This payment removed the lien of the bank of Mr. Calleri’s 1972 Cadillac. The balance in the amount of $1,099.06 together with an additional $3 sup *512 plied by the bank was made payable by official check of the bank to the order of the defendant, Valley Cadillac and Henry A. Calleri. Mr. Calleri used the check in partial payment for a 1973 Cadillac, trading the 1972 Cadillac for the balance of the purchase price. Within three months Mr. Calleri sold the automobile to the defendant who resold it to a third party retaining the proceeds in the amount of $6,700.
The Security Trust Company check to the order of Valley Cadillac and Henry A. Calleri contained on its reverse side the following notice stamped thereon by the bank: "A $3.00 lien filing fee is included in the face amount of this check. Security Trust Company of Rochester, 1 East Avenue, Rochester, New York 14638, should be listed as 1st lienholder on the registration on form MV-82T. If any problems in filing, please call 262-2862.” The defendant, Valley Cadillac, in depositing the check placed its indorsement below this notice. It did not notify the Motor Vehicle Department of the existence of the bank’s lien.
Article 46 of the Vehicle and Traffic Law is clear in its mandate to the owner of the automobile:
"§ 2105. Application for first certificate of title.
"(a) The application for the first certificate of title of a vehicle in this state shall be made by the owner to the commissioner on the form he prescribes and shall contain or be accompanied by: [Paragraphs (1), (2), (3), (4) and (5) are irrelevant to the facts in this case.]
"(b) If the application refers to a vehicle purchased from a dealer, it shall contain the name and address of any lien-holder holding a security interest created or reserved at the time of the sale and be signed by the dealer as well as the owner, and the dealer shall promptly mail or deliver the application to the commissioner.”
The" regulations of the Commissioner of Motor Vehicles go further and attempt to place a duty on the seller to protect the interest of the lienholder. 15 NYCRR 20.15 (a) provides: "If a lender desires to have a lien recorded, he must notify the dealer of such fact and the dealer must list such lienholder on the application for registration or title (Form MV-82T) as directed on that form, and he must also list the total number of such liens on the certificate of sale (Form MV-50) for that vehicle in accordance with the regulations of the commissioner governing dealers. The fee for recording such security interests must be paid by the lender.”
*513 The testimony assumes that Mr. Calleri, as owner of the 1973 Cadillac, did not himself complete the application for certificate of title. This was done by the defendant, Valley Cadillac, without compliance with the quoted regulations.
The defendant maintains that the plaintiff as lender did not provide notice of its desire to have a lien recorded as required by the regulation. The certificate of title for the automobile at the time of its resale by Mr. Calleri to the defendant and again at the time of the sale by the defendant to the third party, gave no notice of lien.
Plaintiff seeks judgment from the defendant in the amount of $4,823.10 plus interest from June 15, 1973. This amount represents the outstanding balance on the original $5,000 loan.
The defendant has denied the allegations of the plaintiff’s complaint and has properly commenced a third-party action against Henry A. Calleri. Unfortunately, Mr. Calleri is not within the jurisdiction.
The purpose of article 46 of title X of the Vehicle and Traffic Law, entitled Uniform Vehicle Certificate of Title Act, and the regulations promulgated thereunder, includes not only the orderly transfer of motor vehicles and protection of those who purchase them but also the protection of those who loan money in reliance on the security which a lien upon a vehicle may provide. Section 20.1 of the Commissioner’s Regulations (15 NYCRR 20.1) in part states: "The intent of article 46 is to provide for the issuance of titles and the recording of liens thereon on vehicles which are classified as 1973 or later model year vehicles”.
Article 46 itself has been modeled on the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act adopted in a number of States.
The regulation of the commissioner clearly places a duty upon the dealer who sells a vehicle and forwards to the department an application for certificate of title. A violation of a regulation does not establish negligence per se but is simply evidence of negligence which the trier of fact may take into consideration with all of the other evidence bearing on that subject. Judge Fuld in Conte v Large Scale Dev. Corp. (10 NY2d 20, 29) stated: "We have repeatedly held that the violation of a rule of an administrative body, lacking the force and effect of a substantive legislative enactment, 'did not *514 establish negligence per se but was simply some evidence of negligence which the jury could take into consideration with all the other evidence bearing on that subject.’ (Schumer v. Caplin, 241 N. Y. 346, 351; see, also, Major v. Waverly & Ogden, 7 NY. 332, 336; Teller v. Prospect Heights Hosp., 280 N. Y. 456, 460.)”
In order to recover, the plaintiff must show not only the negligence of the defendant but also that that negligence was the proximate cause of its loss and that it itself was not contributorily negligent.
Notice to the defendant, Valley Cadillac, of the lien of the Security Trust Company and its intent to have that lien made a part of the certificate of title was shown on the indorsement on the reverse side of Security’s check. The indorsement of the defendant, Valley Cadillac, is directly below and under the notice. The defendant argues that for the notice to be effective, it should have been placed on the face of the check. In Benedict v Cowden (49 NY 396), the evidence established that a memorandum was added at the bottom of a promissory note placed there prior to the time of delivery to the payee. The court stated (p 401): "the order of the words, and the place they occupy in the paper, is not essential so long as they are placed therein, to evidence the actual agreement of the parties, and as a part of the contract.”
Dinsmore v Duncan (57 NY 573) involved a United States Treasury note on the back of which was printed a statement to the effect that at maturity the note was convertible at the option of the holder into Government bonds. The court (p 579) stated: "It cannot be successfully disputed that the printed statement on the back of the note, to the effect that it was convertible into bonds at the option of the holder, formed a part of it, and that the whole contract between the United States and the holder was to be derived from taking into consideration the statements and representations both on the face and the back of the note. The holder, certainly, could have urged this in an application to the government to give him bonds for his notes. (Overton v. Tyler, 3 Penn. St., 346.) It is there said that a 'memorandum indorsed on a note, payable to bearer, is incorporated with it.’ Benedict v. Cowden (49 N. Y., 396) holds that a memorandum upon a note made contemporaneously with and delivered with it, and intended as part of the contract, is a substantive part of the note, and qualifies it the same as if inserted in the body of the instru *515 ment, and with it constitutes a single contract. It cannot be material where the memorandum is found, whether on the front or on the back of the instrument.”
A printed statement on the back of a promissory note reading: " '[t]he within note is subject to the terms of a conditional sales agreement executed by the maker thereof upon this date’ ”, was found by the court to subject the note to the terms of the conditional sales agreement. (Old Colony Trust Co. v Stumpel, 126 Misc 375, 376, affd 219 App Div 771, affd 247 NY 538.)
The notice provided by the plaintiff was clearly directed to the defendant known to the plaintiff to be an automobile dealer upon whom the plaintiff could rely as a party familiar with or who should have been familiar with the change in the Vehicle and Traffic Law and the regulations thereunder.
Plaintiff’s first cause of action which sounds in conversion must fail in that the plaintiff’s interest was equitable, not legal in nature. Its lien not having been recorded gave rise to no legal right. (McCoy v American Express Co., 253 NY 477.) As the court stated in that case (p 485): "The remedy in trover failing, the question is left whether some other remedy applies.”
Plaintiffs second cause of action is grounded in negligence. I find negligence on the part of the defendant and no negligence on the part of the plaintiff. The negligence of the defendant was the proximate cause of the plaintiffs loss.
The case presents difficulties primarily because it seems to be of first import. The changes affected by article 46 in the manner of perfecting liens are radical. In furtherance of the underlying concept of the statute itself, the Commissioner of Motor Vehicles has attempted by regulation to define duties to be placed upon automobile dealers for the protection of those who loan money so that those who desire to purchase may find the funds available to them. Not only is the lender protected but the dealer benefits as well. The philosophy of providing such protection and benefit has long been in the law. The mechanics for their achievement have been changed.
In failing to follow the mandate of the regulation, the defendant in this case, having notice of intended lien, was negligent in failing to give effect to that notice or to make effective inquiry of owner or bank in order accurately to prepare the application for certificate of title. The defendant overlooked both the notice of lien and the notice that the *516 check included $3 more than the amount required to complete the purchase of the car. The $3 constituted the filing fee required by the regulation.
The injury to the plaintiff was compounded when the defendant repurchased the car free of lien and later sold the same, presumably at a profit.
Based on the foregoing, I hereby determine that the plaintiff should recover the full amount of its loss, $4,823.10, with interest from June 25, 1973. This amount represents the amount of plaintiff’s unperfected lien less the amount previously collected from the defendant, Mr. Calleri.