Arvena JOHNSON and Edward Johnson, Plaintiffs,

v.

DOVER ELEVATOR COMPANY, Defendant.

DOVER ELEVATOR COMPANY, Third–Party Plaintiff,

v.

SHELTERED WORKSHOP FOR THE DISABLED, INC., Third–Party Defendant.

No. 92–CV–507.

United States District Court, N.D. New York.

May 3, 1993.

Coughlin & Gerhart, Binghamton, NY (Peter H. Bouman, of counsel), for plaintiffs.

Levene, Gouldin & Thompson, Binghamton, NY (David F. McCarthy, of counsel), for defendant and third-party plaintiff.

Hogan & Sarzynski, Binghamton, NY (John P. Lynch, of counsel), for third-party defendant.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Presently before this court is third-party defendant, Sheltered Workshop for the Disabled, Inc.'s ("Workshop"), motion for summary judgment dismissing the third-party complaint. The defendant/third-party plaintiff, Dover Elevator Co. ("Dover"), filed in opposition to the motion. Plaintiffs join the motion on behalf of the Workshop. The court heard oral argument on April 8, 1992, and at that time reserved decision.

### FACTS

On September 14, 1990, plaintiff, Arvena Johnson, along with two other employees of the Workshop, were riding in an elevator car when it plunged nearly four floors to the basement. Plaintiff allegedly sustained serious and permanent injuries. At the time of the accident the elevator was loaded with a forklift, weighing 5,235 pounds, and the three passengers, for a total weight of 5,702 pounds. The rated lifting capacity for the elevator was 6,000 pounds. The elevator was manufactured by the Rotary Lift Company of Memphis, Tennessee, and installed by the Houser Elevator Company in approximately 1957. At the time of the accident there was an examination and lubrication service agreement ("Agreement") in effect between the Workshop and Dover.

The elevator involved in the accident is hydraulic which is operated by pumping hydraulic fluid from the pump unit or hydraulic reservoir into a piston beneath the elevator car. The elevator has two doors; the "front" door is automatic and slides open in a horizontal motion upon reaching each floor; the "back" door is manual, that is, the operator must first slide open a gate on the inside of the car and then push open the door in a vertical motion. The front, or automatic door, opens on the ground, second, and third floors. The back, or manual door, opens on the basement and loading platform floors.

On August 28, 1990, seventeen days before the accident, pursuant to the Agreement, Timothy DuMond, a Dover employee, replaced several obsolete leaking fittings with two Victaulic Style 99 fittings (or couplings) and gaskets in the hydraulic line of the elevator. Mr. DuMond testified in his deposition that he had never installed that style coupling before, although he had installed other types of victaulic couplings in the past. The repair involved replacing the gaskets and fittings in the feeder line, which connects the hydraulic reservoir in the elevator machine room to the hydraulic piston at the base of the elevator.

The Workshop claims it is entitled to summary judgment dismissing the third-party complaint based on its contention that the elevator crashed through no fault of their

own, and that the accident was caused by the negligence of Dover. For the reasons set forth *infra*, Workshop's motion for summary judgment is denied.

## MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *Lang v. Retirement Living Pub. Company,* 949 F.2d 576, 580 (2d Cir.1991). Therefore, "[s]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■■■ Thus, if the nonmoving party can not produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.,* at 249, 106 S.Ct. at 2510–11. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts

showing that there is a genuine issue for trial. *Id.* "The judge's function is not to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* at 248, 106 S.Ct. at 2510, "such is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Insurance Company,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* ——— U.S. ———, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). The judge's role is "[t]o determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

■■■ The Workshop and the plaintiffs allege that the accident was a result of the failure of the two newly replaced couplings, which in turn allowed all the hydraulic oil to spill out, and hence all the elevator's hydraulic pressure was lost. In addition, it is alleged that the end load of the fittings used in the feeder line were 1,000 pounds less than the original equipment parts, and the maximum working pressure of the replacement parts was 100 pounds per square inch less than the original. Moreover, the Workshop claims that none of its employees ever attempted to repair or maintain the elevator, but instead relied on Dover for the repair and maintenance of the elevator.

The Workshop and the plaintiffs claim that their theory of the accident is derived from Dover Elevator's accident report; the deposition of Mr. Dumond, the Dover employee who installed the fittings and gaskets; the report of James Statts, manager of the Workshop who witnessed oil pumping out of an opening in the hydraulic line soon after the accident; the affidavit of Dr. Jeffrey Ketchman, an engineering scientist; and the affidavit of John Allen, III, a professional consultant.

On the other hand, according to the affidavit of Dr. Eugene Drucker, Dover's expert, the accident occurred because the hydraulic reservoir moved, causing the feeder line to separate and the pump unit to pull away from the couplings which led to the failure of the hydraulic system. Dr. Drucker surmises that since the elevator was near the top floor, the maximum amount of hydraulic fluid had

been pumped from the reservoir into the hydraulic system. He states that when this occurs, there can be an increased vibration in the pump unit; and if the fluid in the feeder line is low, there can be a mixture of air and fluid in the hydraulic system which would increase the vibration of the pump unit. Dover argues that this alone precludes summary judgment. The court agrees.

The plaintiffs, however, argue that Dr. Drucker's opinion is directly contradicted by the accident report, which states: "Elevator found below bottom landing with forklift on. Found oil line had separated from fitting and pushed power unit back. . . ." Dr. Drucker opines that the line separated because the hydraulic unit vibrated—an opinion not inconsistent with the accident report. The issue to be decided by the trier of fact is whether the hydraulic unit vibrated and moved causing the feeder line to separate, or whether the couplings of the feeder line failed, causing the hydraulic fluid to leak out of the line.

The question of liability then will rest on the Agreement which was in effect at the time of the accident. The Workshop and the plaintiffs argue that regardless of the extent to which the Agreement may or may not impose liability, Dover had a duty to repair and replace these parts in a safe manner, and that the failure to do so would constitute negligence. *See St. Vincent's Medical Center v. Vincent E. Iorio, Inc.*, 78 Misc.2d 968, 790, 358 N.Y.S.2d 993, 995 (Sup.Ct.Richmond Co.1974). Dover, however, alleges that the Workshop is a "factory" as defined by Section 2(9) of N.Y. Labor Law, and that, therefore, it is the Workshop which has a nondelegable duty to insure that its elevator is maintained and operated so as to be safe for all purposes. N.Y.S. Labor Law §§ 255, 316; *Lachowicz v. 34 Beaver Realty, Inc.*, 1 A.D.2d 738, 146 N.Y.S.2d 920 (3rd Dep't 1955). In addition, Dover claims that pursuant to the Agreement, it did not, and was not obligated to, inspect the elevator as required by N.Y.Comp.Codes R. & Regs. Tit. 12, part 8. Consequently, the cause of the accident will obviously play a significant part in determining which party is responsible for plaintiff's injuries. Dover, therefore, has raised material issues of fact precluding summary judgment.

Dover also argues that the Workshop violated N.Y.S. Industrial Board Regulations regarding elevators, and that these violations are "some evidence of negligence." *Conte v. Large Scale Development Corp.*, 10 N.Y.2d 20, 176 N.E.2d 53, 217 N.Y.S.2d 25 (1961). That is, Dover claims that if the elevator was a "freight" elevator, passengers were not allowed on it except under certain conditions as approved by the Board. If, however, the elevator was for passengers, then the forklift should not have been on the elevator. The Workshop argues that no violation of any state or federal regulation has been shown by Dover, and that even if a violation was proved, it would not relieve Dover from its own negligence in selecting an inadequate replacement part or improperly installing the part. In addition, the Workshop states that it has never been cited by the State of New York Department of Labor or U.S. Occupational Safety and Health Administration for being out of compliance with elevator regulations. Such determinations, however, are not for the court to resolve on a motion for summary judgment.

Finally, plaintiffs argue that in the elevator's thirty-three year history, there was never an accident because the pump unit had moved. In addition, although Dover states that after the accident it had to secure the pump unit to the floor, Robert Lee, an employee of Dover, testified that it was *not* normal practice to anchor the pump unit to the floor. Also, plaintiffs argue that even if the pump unit should have been anchored to the floor, Dover had many years, upon inspection, to discover that the pump unit was not anchored. Mr. Lee testified that during annual inspections, Dover personnel look at the pump unit itself and actually go in the pump unit area. Again, however, such a resolution is not proper on a summary judgment motion.

### CONCLUSION

Therefore, the court concludes that there exists issues of fact precluding summary judgment in favor of the third-party defen-

**54**

dant, Sheltered Workshop for the Disabled, Inc.

Accordingly, it is

ORDERED, that the third-party defendant's motion for summary judgment be and the same is hereby denied.

IT IS SO ORDERED.